UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

FILED

| | |
|---|---|
| LAURA ALLEN, INDIVIDUALLY AND AS ADMINISTRATRIX OF THE ESTATE OF DAN ALLEN, AND AS NEXT FRIEND TAYLOR ALLEN AND DANIELLE ALLEN; AND MARK ALLEN<br>      Plaintiffs,<br><br>v.<br><br>MARTIN SURFACING, INC.; MARTIN SURFACING A DIVISION OF SOUTHWEST RECREATION; RONALD RYBA; SOUTHWEST RECREATIONAL INDUSTRIES, INC., d/b/a MARTIN SURFACING; REED J. SEATON; ROBERT N. WOLESENSKY, JR.; DYNAMIC SPORTS CONSTRUCTION, INC.; AND DOES<br>      Defendants. | CIVIL ACTION NO. 05-40048-FDS |

**OBJECTION OF DEFENDANT DYNAMIC SPORTS CONSTRUCTION, INC. TO
PLAINTIFFS' REQUEST FOR ENTRY OF DEFAULT AGAINST MARTIN
SURFACING, INC. AND MARTIN SURFACING, A DIVISION OF SOUTHWEST
RECREATION [sic]**

Defendant Dynamic Sports Construction, Inc. ("Dynamic") hereby objects to
Plaintiffs' Request for Entry of Default Against Martin Surfacing, Inc. and Martin
Surfacing, A Division of Southwest Recreation [sic] upon the following grounds:

1.    Plaintiffs filed two (2) requests for default pertaining to co-Defendants,
Martin Surfacing, Inc. and Martin Surfacing, a Division of Southwest Recreation [sic] on
that basis that the Amended Complaint and Summons were returned to his office as
"undeliverable" for both Defendants.  In Massachusetts, service by mail upon foreign
corporations is only effective if it is accompanied by a signed receipt.  See MRCP, Rule

4(e). Therefore, the two Defendants against whom Plaintiffs seek default have not been served with process and cannot be in default.

      2.     To the extent Plaintiffs seek default against "Martin Surfacing, Inc, a Division of Southwest Recreation [sic]", the Plaintiffs are in apparent violation of the automatic stay provided in 11 U.S.C. § 362. To the extent "Martin Surfacing" is a mere division of a company, the "division" does not have a separate existence under the law of Massachusetts or any other state. A claim against a "division" is a claim against the business entity of which the "division" is a part. Southwest Recreational Industries, Inc. is a debtor in a bankruptcy case now pending in the United States Bankruptcy Court for the Northern District of Georgia at #04-40656-pwb. (Filed on February 13, 2004). [1] The Plaintiffs' Amended Complaint alleges a pre-petition liability and seeks to recover damages. Pursuant to § 362, efforts to recover pre-petition debts against the Debtor are stayed and the Plaintiffs have offered no evidence that they have obtained an Order from the Bankruptcy Court granting them relief from the automatic stay to pursue Southwest in this case. Accordingly, Plaintiffs' efforts to obtain a default judgment are in violation of the automatic stay.

      3.     Worse, long before he filed the application for default (November 23, 2005), Plaintiffs' counsel was repeatedly informed of the Southwest bankruptcy. [2] The fact of Southwest's bankruptcy could have been confirmed by counsel with a minimum of effort. While counsel may well be in contempt of the Bankruptcy Court, his effort to

---

[1] *See* Exhibit A.

[2] *See* Exhibit B.

2

obtain a default judgment against an entity known to be protected by the automatic stay should earn him this Court's sanction, as well, pursuant to the Court's inherent power.

4.    Likewise, Plaintiffs' counsel has been repeatedly informed that Dynamic Sports Construction, Inc., another Defendant herein, is the successor by name change to the Texas corporation, "Martin Surfacing, Inc." that was formed on January 13, 2004. (See Exhibit B hereto.)    Accordingly, to the extent that the Plaintiffs seek default judgment against the "Martin Surfacing, Inc." whose name was later changed to Dynamic Sports Construction, Inc., default is improper because Dynamic has appeared in the action and vigorously defended.    Dynamic, the successor by name change to "Martin Surfacing, Inc.," is *not* in default.    For that reason alone, the application for default against "Martin Surfacing, Inc." should be denied.

5.    Again, Plaintiffs' counsel long ago was provided with documentation from the Texas Secretary of State and the Georgia Bankruptcy Court proving that:    (1) "Martin Surfacing, Inc." was formed as a Texas corporation on January 13, 2004 – long after the events described in the Amended Complaint allegedly transpired; (2) Martin Surfacing, Inc. changed its name to Dynamic Sports Construction, Inc. in March, 2004; and (3) that, pursuant to an April 1, 2004 Order of the Bankruptcy Court, Dynamic acquired (by auction) certain assets – but no liabilities – of Southwest relating to its athletic flooring business (including the trade name "Martin Surfacing").    To the extent any of this information required verification, Plaintiffs' counsel easily could have verified it.    Accordingly, again, the Court should consider exercising its inherent authority to sanction Plaintiffs' counsel for attempting to obtain default against Martin Surfacing, Inc. and causing Dynamic to incur the expense of responding to the application for default.

WHEREFORE, Defendant Dynamic Sports Construction, Inc. respectfully objects to the entry of default as requested by Plaintiff.

Respectfully submitted,

Lee Stephen MacPhee
Gareth W. Notis
MORRISON MAHONEY, LLP
250 Summer Street
Boston, Massachusetts  02210
(617) 439-7500

P. Douglas Barr
Lindsey W. Ingram III
STOLL, KEENON & PARK, LLP
300 West Vine Street
Suite 2100
Lexington, Kentucky  40507
(859) 231-3000

By: _____
    Counsel for Defendants
    Dynamic Sports Construction, Inc.

## CERTIFICATE OF SERVICE

This is to certify that a true and accurate copy of the foregoing has been served, via U.S. Mail, this 16TH day of December 2005, upon the following:

Robert J. Bonsignore, Esq.
Bonsignore & Brewer
23 Forest Street
Medford, MA 02155

Joseph M. Noone, Esq.
James T. Sullivan, Esq.
Avery, Dooley, Post & Avery, LLP
90 Concord Avenue
Belmont, MA 02478

_____
Counsel for Defendant
Dynamic Sports Construction, Inc.

4



RR(Official Form 1) (12/03)

| FORM B1 | United States Bankruptcy Court<br>Northern District of Georgia | Voluntary Petition |
|---|---|---|

| Name of Debtor (if individual, enter Last, First, Middle):<br>**SOUTHWEST RECREATIONAL INDUSTRIES, INC.** | Name of Joint Debtor (Spouse) (Last, First, Middle): |
|---|---|
| All Other Names used by the Debtor in the last 6 years<br>(include married, maiden, and trade names):<br><br>**See attached schedule.** | All Other Names used by the Joint Debtor in the last 6 years<br>(include married, maiden, and trade names): |
| Soc. Sec./Tax I.D. No. (if more than one, state all):<br>**74-2315598** | Soc. Sec./Tax I.D. No. (if more than one, state all): |
| Street Address of Debtor (No. & Street, City, State & Zip Code):<br>**701 Leander Drive**<br>**Leander, Texas 78641** | Street Address of Joint Debtor (No. & Street, City, State, & Zip Code): |
| County of Residence or of the<br>Principal Place of Business:  **Williamson** | County of Residence or of the<br>Principal Place of Business: |
| Mailing Address of Debtor (if different from street address):<br>**P.O. Box 589, Leander, Texas 78646** | Mailing Address of Joint Debtor (if different from street address): |
| Location of Principal Assets of Business Debtor<br>(if different from street address above) | **CA, CO, GA, IL, KS, NJ, OH, TX and WA**<br>**(On a consolidated basis with its debtor affiliates)** |

### Information Regarding the Debtor (Check the Applicable Boxes)

Venue (Check any applicable box)

☒ Debtor has been domiciled or has had a residence, principal place of business, or principal assets in this District for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other District.

☐ There is a bankruptcy case concerning debtor's affiliate, general partner, or partnership pending in this District.

| Type of Debtor (Check all boxes that apply) | | Chapter or Section of Bankruptcy Code Under Which<br>the Petition is Filed (Check one box) | | |
|---|---|---|---|---|
| ☐ Individual(s) | ☐ :Railroad | ☐ Chapter 7 | ☒ Chapter 11 | ☐ Chapter 13 |
| ☒ Corporation | ☐ :Stockbroker | ☐ Chapter 9 | ☐ Chapter 12 | ☐ Sec. 304 - Case ancillary to foreign proceeding |
| ☐ Partnership | ☐ :Commodity Broker | | | |
| ☐ Other _____ | ☐ Clearing Bank | | | |

| Nature of Debts (Check one box) | | Filing Fee (Check one box) |
|---|---|---|
| ☐ Consumer /Non-Business | ☒ Business | ☒ Full Filing Fee attached. |

**Chapter 11 Small Business** (Check all boxes that apply)

☐ Debtor is a small business as defined in 11 U.S.C. § 101

☐ Debtor is and elects to be considered a small business under 11 U.S.C. § 1121(e) (Optional)

Filing Fee to be paid in installments (Applicable to individuals only)
Must attach signed application for the court's consideration
certifying that the debtor is unable to pay fee except in installments.
Rule 1006(b).  See Official Form No. 3.

Statistical/Administrative Information (Estimates only) **On a consolidated basis as at 12/31/03**

☒ Debtor estimates that funds will be available for distribution to unsecured creditors.

☐ Debtor estimates that, after any exempt property is excluded and administrative expenses paid, there will be no funds available for distribution to unsecured creditors.

THIS SPACE IS FOR COURT USE ONLY

| Estimated Number of Creditors | 1 - 15 | 16 - 49 | 50 - 99 | 100 - 199 | 200 - 999 | 1,000 – over |
|---|---|---|---|---|---|---|
| | ☐ | ☐ | ☐ | ☐ | ☐ | ☒ |

| Estimated Assets | $0 to<br>$50,000 | $100,001 to<br>$500,000 | $500,001 to<br>$1 million | $1,000,001 to<br>$10 million | $10,000,001 to<br>$50 million | $50,000,001 to<br>$100 million | More than<br>$100 million |
|---|---|---|---|---|---|---|---|
| | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☒ |

| Estimated Debts | $0 to<br>$50,000 | $50,001 to<br>$100,000 | $100,001 to<br>$500,000 | $500,001 to<br>$1 million | $1,000,001 to<br>$10 million | $10,000,001 to<br>$50 million | $50,000,001 to<br>$100 million | More than<br>$100 million |
|---|---|---|---|---|---|---|---|---|
| | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☒ | ☐ |

**(Official Form 1) (12/03)**                                                                 **FORM B1, Page 2**

| | |
|---|---|
| | Name of Debtor(s):  **Southwest Recreational Industries, Inc.** |

**Prior Bankruptcy Case Filed Within Last 6 Years** (If more than one, attach additional sheet)

| Location Where Filed:  **N/A** | Case Number: | Date Filed: |
|---|---|---|

**Pending Bankruptcy Case Filed by any Spouse, Partner or Affiliate of this Debtor** (If more than one, attach additional sheet)

| Name of Debtor: | Case Number: | Date Filed: |
|---|---|---|
| District: | Relationship: | Judge: |

## Signatures

**Signature(s) of Debtor(s) (Individual/Joint)**

I declare under penalty of perjury that the information provided in this petition is true and correct.
[If petitioner is an individual whose debts are primarily consumer debts and has chosen to file under chapter 7] I am aware that I may proceed under chapter 7, 11, 12 or 13 of title 11, United States Code, understand the relief available under each such chapter, and choose to proceed under chapter 7.
I request relief in accordance with the chapter of title 11, United States Code, specified in this petition.

X_____
Signature of Debtor

X_____
Signature of Joint Debtor

_____
Telephone Number (If not represented by attorney)

Date;  February

**Exhibit A**

(To be completed if debtor is required to file periodic reports (e.g., forms 10K and 10Q) with the Securities and Exchange Commission pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934 and is requesting relief under chapter 11)

☒    Exhibit A is attached and made a part of this petition.

**Exhibit B**
(To be completed if debtor is an individual whose debts are primarily consumer debts)

I, the attorney for the petitioner named in the foregoing petition, declare that I have informed the petitioner that [he or she] may proceed under chapter 7, 11, 12, or 13 of title 11, United States Code, and have explained the relief available under each such chapter.

X_____
Signature of Attorney for Debtor(s)          Date

**Signature of Attorney**

X _/s/ Matthew W. Levin_
Signature of Attorney for Debtor(s)

_Matthew W. Levin (Georgia Bar No. 448270)_
Printed Name of Attorney for Debtor(s)

_Alston & Bird LLP_
Firm Name

_One Atlantic Center, 1201 West Peachtree St., Atlanta, GA 30309_
Address

_404-881-7000_
Telephone Number

_February 13, 2004_
Date

**Exhibit C**

Does the debtor own or have possession of any property that poses or is alleged to pose a threat of imminent and identifiable harm to public health or safety?

☐    Yes, and Exhibit C is attached and made a part of this petition.
☒    No

**Signature of Non-Attorney Petition Preparer**

I certify that I am a bankruptcy petition preparer as defined in 11 U.S.C. § 110, that I prepared this document for compensation, and that I have provided the debtor with a copy of this document.

_____
Printed Name of Bankruptcy Petition Preparer

_____
Social Security Number

**Signature of Debtor (Corporation/Partnership)**

I declare under penalty of perjury that the information provided in this petition is true and correct, and that I have been authorized to file this petition on behalf of the debtor.

The debtor requests relief in accordance with the chapter of title 11, United States Code, specified in this petition.

X _/s/ Robert A. Hale_
Signature of Authorized Individual

_Robert Hale_
Printed Name of Authorized Individual

_Vice President_
Title of Authorized Individual

_February   , 2004_
Date

Address

_____
Names and Social Security numbers of all other individuals who prepared or assisted in preparing this document:

If more than one person prepared this document, attach additional sheets conforming to the appropriate official form for each person.

X_____
Signature of Bankruptcy Petition Preparer

_____
Date

A bankruptcy petition preparer's failure to comply with the provisions of title 11 and the Federal Rules of Bankruptcy Procedure may result in fines or imprisonment or both.  11 U.S.C. § 110; 18 U.S.C. § 156.

## ATTACHMENT TO VOLUNTARY PETITION

Pending Bankruptcy Cases Filed by Affiliates of the Debtor:

On February 13, 2004, each of the affiliated entities listed below, including the debtor in this Chapter 11 case (collectively, the "Debtors"), filed a petition in this court for relief under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101-1330. Southwest Recreational Industries, Inc. is the parent corporation of the other Debtors, which are wholly-owned subsidiaries of Southwest Recreational Industries, Inc. Contemporaneously with the filing of their petitions, the Debtors filed a motion requesting that the Court consolidate their Chapter 11 cases for administrative purposes only.

**The Debtors are the following entities:**

Southwest Recreational Industries, Inc.
E.J. Renner & Associates, Inc. d/b/a Malott Peterson Renner, Inc.
AWS Construction, Inc.

## LIST OF TRADENAMES AND D/B/A'S

S.W. Franks Construction Co.
Malott Peterson Renner, Inc.
Martin Surfacing, Inc.
Nexturf
Surfacing Specialists
Ameritech Plastics, Inc.
Five Star Finishing, Inc.
Astroturf Manufacturing Co., Inc.
Astroturf Surfaces Canada Ltd. n/k/a SRI Sports Canada, Inc.
Astroturf Surfaces Pacific Pty Ltd n/k/a SRI Sports Pty Ltd.
Astro Truf International Barbados (dissolved)
Astroturf Europe n/k/a SRI Sports Europe
Astroturf UK (no longer in operation)
Southwest Caribe, Inc.
AstroPlay
Astroturf
SRI Sports



# S T O L L | K E E N O N | & | P A R K | L L P

300 WEST VINE STREET | SUITE 2100 | LEXINGTON, KENTUCKY 40507-1801
(859) 231-3000 PHONE | (859) 253-1093 FAX | WWW.SKP.COM

P. DOUGLAS BARR
859-231-3046
dbarr@skp.com

February 21, 2005

**VIA FAX AND REGULAR MAIL**
Robert J. Bonsignore, Esq.
Bonsignore & Brewer
23 Forest Street
Medford, MA 02155

      Re:    Laura Allen, et al. v. Martin Surfacing, Inc., et al.

Dear Mr. Bonsignore:

      This firm is national counsel for Dynamic Sports Construction, Inc., and its President and CEO, Robert M. Wolesensky, Jr. We have reviewed the Amended Complaint in the above-captioned matter with particular attention to the claims against our clients. I write to initiate a discussion with you concerning those claims. We believe and hope that the claims against Dynamic were included only because of insufficient facts and that we can convince you to withdraw those claims voluntarily.

      Paragraph 190 of the Amended Complaint is factually inaccurate in a way that appears to have led to the improper inclusion of Dynamic in the above-captioned case. Martin Surfacing, Inc., was formed in the early 1970's, in Maryland. By 1999, the shares of stock in Martin Surfacing, Inc. had come to be owned by a subsidiary company of Armstrong World Industries. In June, 1999, Armstrong entered into an Asset Purchase Agreement with Southwest Recreational Industries, Inc. whereby Southwest acquired certain assets of Martin Surfacing, Inc., including the goodwill and the intellectual property of Martin, including the trade name(s) "Martin Surfacing (Inc.)," among others. Paragraph 191 alleges that Martin Surfacing, Inc. underwent a name change to "DD Nitram, Inc." and we believe that to be true, however, of course, Armstrong still owned the shares of stock in Martin. (Note that "Nitram" is "Martin," spelled backwards.) We understand that Armstrong subsequently liquidated what was left of Martin/Nitram and that, by late 2000, "Martin/Nitram" did not exist.

Page 2

In late 2003 and early 2004, Southwest's parent company (American Sports Products Group) was in the process of attempting to avert bankruptcy by selling off its various operating divisions. At that time, ASPG/Southwest were in discussions with Mr. Wolesensky concerning the purchase of the assets associated with Southwest's flooring division. As of that time, "Martin Surfacing" was a "d/b/a" or "division" of Southwest. With ASPG and Southwest's consent, Mr. Wolesensky and others formed "Martin Surfacing, Inc." for the purpose of acquiring by agreement the assets of Southwest's flooring division. This later Martin Surfacing, Inc. was a Texas corporation in which neither ASPG, Southwest nor any of their related companies, owned any interest whatsoever. As it turned out, however, Mr. Wolesensky and ASPG/Southwest were unable to reach agreement concerning the sale of the flooring assets.

In February, 2004, Southwest and many related entities filed a Chapter 11 bankruptcy in the U.S. Bankruptcy Court for the Northern District of Georgia. In early March, the new Martin Surfacing, Inc. changed its name to Dynamic Sports Construction, Inc., because the "Martin Surfacing" trademark/trade name was a valuable asset of Southwest's and was subject to control by the bankruptcy court. Subsequently, the bankruptcy conducted an auction of certain assets of Southwest, including the assets associated with the flooring division. Dynamic was the successful bidder and thus acquired certain limited assets of Southwest's flooring division in the auction. Dynamic acquired none of Southwest's liabilities, by federal law and by Court Order.

We have examined the Amended Complaint in the above-captioned action and see no basis for a claim that Dynamic may be liable to the Plaintiffs. Dynamic (or its predecessor) did not exist at the time the alleged cause of action arose and cannot be directly liable. Your Amended Complaint mistakenly alleges that the original "Martin Surfacing, Inc." was acquired by Southwest in 1999 when, in fact, Southwest merely bought certain assets from the original Martin Surfacing, Inc., which later was dissolved. Dynamic merely acquired certain assets of Southwest and specifically did not take assignment of any alleged liabilities, so we see no basis for successor liability. Finally, Southwest has never owned equity or other interest in Dynamic (or its predecessor) so there is no basis for alleging vicarious liability.

Dynamic's business is highly competitive and it is likely that Dynamic's competitors soon will to attempt to gain competitive advantage in the marketplace by citing to this lawsuit. As I'm sure you can appreciate, it is very important to Dynamic to be dropped from this lawsuit immediately. Since all of the facts establishing that Dynamic cannot be liable are in the public domain, we hope you will agree to do so.

Page 3

Mr. Wolesensky and I are available to meet with you to discuss these matters as soon as possible and to provide you with copies of the documentary evidence discussed above.    We likewise believe that the claims against Mr. Wolesensky personally are unsupported and otherwise not viable and we would like to discuss those with you as well. In the meantime, for your convenience, I have enclosed herewith a copy of the bankruptcy court's Order approving the sale of certain assets of Southwest's flooring division to Dynamic.

Thank you for your immediate attention to this matter.  I look forward to hearing from you.

Very truly yours,

STOLL, KEENON & PARK, LLP

P. Douglas Barr

cc:     Robert M. Wolesensky, Jr. (via email)

ENTERED ON DOCKET
4-1-04 fms

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ROME DIVISION

IN RE:                                    )        Chapter 11
                                          )        Judge Paul W. Bonapfel
SOUTHWEST RECREATIONAL                    )
INDUSTRIES, INC., et al.                  )        Case Nos. 04-40656 through 04-40658
                                          )
        Debtors.                          )        (Jointly Administered Under Case
_____       )        No. 04-40656)

## ORDER UNDER 11 U.S.C. §§ 105, 363, [AND 365] APPROVING (I) ASSET PURCHASE AGREEMENT WITH DYNAMIC SPORTS CONSTRUCTION, INC.; (II) SALE FREE AND CLEAR OF ALL LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES[, AND (III) ASSUMPTION AND ASSIGNMENT OF CERTAIN RELATED EXECUTORY CONTRACTS] (FLOORING ASSETS)

Upon the motion (the "Sale Motion") of Southwest Recreational Industries, Inc. ("SRI"),

E.J. Renner & Associates, Inc. d/b/a Malott Peterson Renner, Inc. ("EJR") and AWS

Construction, Inc. ("AWS"), debtors and debtors-in-possession in the above-captioned jointly

administered cases (collectively, the "Debtors") dated March 1, 2004, for, *inter alia*, an order

(the "Sale Order") under 11 U.S.C. Sections 105, 363 and 365 authorizing (a) the Debtors to sell

certain of their assets associated with their indoor flooring business (the "Assets") free and clear

of all liens, claims, interests, and encumbrances to Dynamic Sports Construction, Inc. ("Buyer")

pursuant to the terms and conditions of an Asset Purchase Agreement dated March 26, 2004

among the Debtors and the Buyer (the "Asset Purchase Agreement"),[1] and (b) the Debtors to

assume and assign to the Buyer certain related executory contracts and unexpired leases; and

---

[1] Unless otherwise defined, capitalized terms used herein shall have the meanings ascribed to them in the Asset Purchase Agreement.

ATLANTA 395011v4

Upon this Court's order dated March 9, 2004, scheduling a hearing with respect to the sale of the Assets, prescribing the form and manner of notice thereof, and approving bidding procedures related to the sale (the "Procedures Order"); and

Due notice of the proposed sale, the Procedures Order, the Sale Hearing (as defined below), and the assumption and assignment of the Assumed Contracts having been given to all parties entitled thereto under the Procedures Order, as evidenced by the affidavits of service previously filed with this Court; and

The solicitations made by the Debtors and their advisors in connection with the proposed sale of the Assets being adequate and reasonable to obtain the highest and best price for the sale of the Assets; and

An auction (the "Auction") having been held for the Assets on March 24, 2004; and

A hearing having been held before the Court on March 26, 2004 to consider the sale of the Assets and the assumption and assignment of certain executory contracts (the "Sale Hearing"), and objections timely filed thereto, at which time all parties in interest were afforded an opportunity to be heard, and a second hearing being held before this Court on March 29, 2004, to further the assumption and assignment of the executory contracts and the objections thereto;

NOW, THEREFORE, based upon all of the evidence, including affidavits, proffered or adduced at the Sale Hearing, memoranda, objections and argument of counsel in connection with the Sale Hearing, and upon the entire record of the Sale Hearing, and after due deliberation thereon, and good cause appearing therefor,

IT IS HEREBY FOUND, CONCLUDED AND DETERMINED THAT:

A.     The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding by Bankruptcy Rule 9014. To the extent any finding of fact shall later be determined to be a conclusion of law it shall be so deemed and vice versa.

B.     This Court has jurisdiction to hear and determine the Motion pursuant to 28 U.S.C. §§ 157 and 1134.

C.     Venue of this case in this district is proper pursuant to 28 U.S.C. § 1409(a).

D.     Determination of the Sale Motion is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A), (N) and (O). The statutory predicates for the relief provided for herein are Sections 105, 363, and 365 of the United States Bankruptcy Code, 11 U.S.C. §§ 101 et seq. as amended (the "Bankruptcy Code") and Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") 2002, 6004, 6006 and 9014.

E.     The Debtors have followed the procedures for notice of the Sale Motion and the Sale Hearing on the sale of the Assets set forth in the Procedures Order.

F.     Proper, timely, adequate and sufficient notice of the Motion, the Sale Hearing and the sale of the Assets has been provided in accordance with Section 102(1) of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 6006 and 9014 and the Procedures Order, and no other or further notice of the Motion, the Sale Hearing, or of the entry of this Sale Order is required. The solicitations by the Debtors and their advisors in connection with the sale of the Assets were adequate and reasonable to obtain the highest and best price for the Assets.

- 3 -

G.    A reasonable opportunity to object or to be heard regarding the relief requested in the sale Motion has been afforded to all interested persons and entities, including (a) all parties who claim interests in or liens upon the Assets, (b) all parties to the executory contracts that the Debtors seek to assume and assign, (c) all governmental taxing authorities and surety bond providers who have, or as a result of the sale of the Assets may have, claims, contingent or otherwise, against any Debtor, (d) all creditors and parties who have filed notices of appearance in this case, and (e) all parties who are or may be bidders for the Assets.

H.    After the Auction, the Debtors considered competing bids for the Assets and determined that the bid of Buyer represented by the Asset Purchase Agreement is the highest and best offer that has been received.

I.    At the Sale Hearing, the Debtors recommended that the Court approve the Asset Purchase Agreement, a true and correct copy of which is attached hereto as Exhibit "A."

J.    Buyer has provided the Debtors with an escrowed cash deposit of $90,000.00 and has adequately demonstrated its financial wherewithal to pay the Purchase Price and its commitment to close the transactions contemplated by the Asset Purchase Agreement.

K.    The highest and best price for the Assets is represented by the Asset Purchase Agreement, and it is therefore in the best interest of the Debtors, their respective creditors, and their respective estates that the Court enter this Order authorizing and directing, under Sections 105, 363 and 365 of the Bankruptcy Code, (1) the Debtors to enter into and comply with the terms and conditions of the Asset Purchase Agreement; (2) the Debtors to sell the Assets to Buyer, free and clear of any and all liens, claims, interests and encumbrances whatsoever (including all "interests" in the Assets within the meaning of section 363(f) of the Bankruptcy

- 4 -

Code), except as expressly permitted by the Asset Purchase Agreement; and (3) the Debtors to assume and assign to Buyer the executory contracts of the Debtors (i) to which no objection was timely filed or advocated by the other party to the executory contract, or (ii) as to which any filed objection to the Debtors' assumption and assignment of the contract has been withdrawn; and (iii) as to which no cure amount has been asserted other than the Accounts Payable reflected on Schedule 1(a)(i) of the Asset Purchase Agreement (the "Assumed Contracts"). A schedule of the Assumed Contracts is attached to this Order as Exhibit "B."

    L.    The Hartford Casualty & Surety Co. ("the Hartford") has filed an objection to the Debtors' assumption and assignment to the Buyer of certain of the Debtors' executory flooring contracts upon which the Hartford has issued a surety bond to guarantee the Debtors' performance of the contract (the "Bonded Flooring Contracts"). The Hartford has agreed to withdraw its objection to the Debtors' assumption of the Bonded Flooring Contracts, and the assignment of the Bonded Flooring Contracts to the Buyer, on the condition that the Buyer provide a replacement surety bond for the Buyer's completion of the Bonded Contracts from a surety with a Treasury rating of A- or better.

    M.    Upon the issuance of this order (a) each of the Debtors has full corporate power and authority to execute and deliver the Asset Purchase Agreement and all other documents contemplated thereby, (b) each of the Debtors has all the corporate power and authority necessary to consummate the transactions contemplated by the Asset Purchase Agreement, and (c) no other consents or approvals are required for assignment of the Assumed Contracts. Other than those consents expressly provided for in the Asset Purchase Agreement, no consents, approvals or orders are required for the Debtors to consummate the transactions contemplated by

the Asset Purchase Agreement and complete the assumption and assignment of the Assumed

Contracts.

N.      Approval of the Asset Purchase Agreement, and consummation of the sale of the

Assets at this time, are in the best interests of each of the Debtors, their respective creditors, and

their respective estates. The Debtors have presented good and sufficient business justification

for (i) the sale of the Assets pursuant to Section 363 of the Bankruptcy Code in advance of the

confirmation of a plan or plans of reorganization, and (ii) the assumption and assignment of the

Assumed Contracts, in that, among other things:

(1)      An expeditious sale of the Assets in accordance with the procedures

followed by the Debtors has resulted in the highest possible price for the Assets, and in

the absence of a prompt sale the value of the Assets will likely decline due to

deteriorating market conditions, inadequate liquidity for necessary operating and capital

expenditures, and uncertainty about the future of the Debtors' businesses; and

(2)      Claims against the Debtors' estates will be minimized as a result of the

prompt consummation of a sale of the Assets and the concomitant assumption and

assignment of the Assumed Contracts to the Buyer.

O.      The Asset Purchase Agreement represents the highest and best offer for the

Assets, the purchase price is fair and reasonable, and constitutes fair consideration and

reasonably equivalent value under the Bankruptcy Code and applicable state law.

P.      As a condition to the sale of the Assets to the Buyer, the Buyer requires that the

Assets be sold free and clear of any and all liens, claims, interests and encumbrances whatsoever,

except those specifically assumed by the Buyer under the Asset Purchase Agreement, and that

the Buyer has no liability for any other liabilities of the Debtors. The Buyer would not enter into and consummate the sale, thus adversely affecting the Debtors' estates, if the sale to the Buyer were not free and clear of any and all liens, claims, interests and encumbrances of the Debtors, other than as specifically provided in the Asset Purchase Agreement, or if the Buyer were or would be liable for liabilities of the Debtors other than as specifically assumed in the Asset Purchase Agreement.

Q.    The cure amounts as set forth on Exhibit 1(a)(i) to the Asset Purchase Agreement and Exhibit B attached hereto (the "Cure Amounts") are the sole amounts necessary to cure all defaults, if any, and to pay all actual or pecuniary losses that have resulted from such defaults under the Assumed Contracts, except that, where the Cure Amount for a particular Assumed Contract is listed as "to be determined" on Exhibit A, such Cure Amount will be determined by the Court as set forth herein in Paragraph 20.

R.    The Buyer has provided adequate assurance of the Buyer's future performance under the Assumed Contracts within the meaning of Sections 365(b)(1)(C) and (f)(2)(B) of the Bankruptcy Code.

S.    The assumption and assignment of the Assumed Contracts are in the best interest of each of the Debtors and its creditors and estate, and represents a prudent exercise of each Debtor's business judgment.

T.    The Debtors are not affiliated with the Buyer, and the Asset Purchase Agreement was negotiated, proposed and entered into by the parties without collusion, in good faith, from arm's length bargaining positions and for fair value. Accordingly, the Buyer is a good faith purchaser under Section 363(m) of the Bankruptcy Code and, as such, is entitled to the

protections afforded thereby. Neither any Debtor nor the Buyer has engaged in any conduct that would cause or permit the Asset Purchase Agreement to be avoided under Section 363(n) of the Bankruptcy Code.

U.    In the absence of a stay, the Buyer will be acting in good faith within the meaning of Section 363(m) of the Bankruptcy Code in consummating the transactions contemplated by the Asset Purchase Agreement, including the assumption and assignment of the Assumed Contacts, at any time after the entry of this Sale Order. Notwithstanding Bankruptcy Rule 6004(g), this Order shall become effective immediately upon entry.

V.    The transfer of the Assets and the assignment of the Assumed Contracts contemplated by the Asset Purchase Agreement (a) are or will be legal, valid and effective transfers of property of the Debtors' estates to the Buyer, and (b) vest or will vest the Buyer with all right, title and interest of the Debtors in and to the Assets and Assumed Contracts free and clear of any and all interests, including all liens, claims and encumbrances whatsoever, under Sections 363(f) and 105 of the Bankruptcy Code, other than as specifically provided in the Asset Purchase Agreement.

W.    The transfer of the Assets and the assignment of the Assumed Contracts does not, and will not, subject the Buyer to any liability for claims against the Debtors by reason of such transfer under the laws of the United States, any state, territory or possession thereof or the District of Columbia applicable to such transactions.

X.    All of the provisions of this Sale Order are nonseverable and mutually dependent.

- 8 -

NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED
THAT:

1.    The Motion be, and it hereby is, granted as to the Assets, in accordance with the
terms of this Order.

2.    All objections to the sale of the Assets that have not been withdrawn, waived,
settled or expressly preserved pursuant to the terms of this Order, and all reservations of rights
included therein, are overruled on the merits.

3.    The terms and conditions of the Asset Purchase Agreement are hereby approved
in all respects, and the sale of the Assets pursuant to the Asset Purchase Agreement is hereby
authorized under Sections 363(b) and 363(f) of the Bankruptcy Code, with no further consent,
approval or order being required.

4.    By the issuance of this Order, each of the Debtors is authorized and directed to
execute and deliver, and empowered and directed fully to perform under, consummate and
implement, the Asset Purchase Agreement, together with all additional instruments and
documents that may be reasonably necessary or desirable to implement the Asset Purchase
Agreement, and to take all further actions as may reasonably be requested by the Buyer for the
purpose of assigning, transferring, granting, conveying and conferring to the Buyer, or reducing
to the Buyer's possession, any or all of the Assets, or as may be necessary or appropriate to the
performance of the obligations as contemplated by the Asset Purchase Agreement.

5.    Pursuant to Sections 105(a) and 363(f) of the Bankruptcy Code, the Assets shall
be transferred to the Buyer upon Closing under the Asset Purchase Agreement and, except as
specifically specified in the Asset Purchase Agreement, shall be free and clear of any and all

mortgages, security interests, conditional sale or other title retention agreements, pledges, liens, taxes, judgments, demands, encumbrances, easements, restrictions or charges of any kind or nature, if any, including, but not limited to, any restriction on the use, voting, transfer, receipt of income or other exercise of any attributes of ownership (the foregoing collectively referred to herein as "Liens") and all debts arising in any way in connection with any acts of any of the Debtors, claims (as that term is defined in the Bankruptcy Code), obligations, demands, guaranties, options, rights, contractual commitments, restrictions, interests and matters of any kind and nature whatsoever, whether arising prior to, or subsequent to, the commencement of these cases, whether matured or unmatured, liquidated or unliquidated, whether known or unknown, and whether imposed by agreement, understanding, law, equity or otherwise, including, without limitation, those of the kind specified in Sections 502(g), 502(h) and 502(i) of the Bankruptcy Code (the foregoing collectively referred to as "Claims" herein), with all such Liens and Claims released, terminated and discharged as to the Assets and to attach to the proceeds of the sale paid by the Buyer, in the order of their priority, with the same validity, force and effect which they now have as against the Assets.

6.    With the exception of any liabilities specifically assumed under the Asset Purchase Agreement, all persons and entities holding Liens or Claims of any kind or nature with respect to the Assets are hereby barred and enjoined from asserting such Liens and Claims of any kind and nature against the Buyer, its successors or assigns, or the Assets.

7.    Each of the Debtors is hereby authorized and directed in accordance with Section 365 of the Bankruptcy Code (a) to assume and assign to the Buyer each of the Assumed Contracts pursuant to the provisions of Sections 365 of the Bankruptcy Code, in each case free

and clear of all Claims and Liens, effective as of Closing, and (b) to execute and deliver to the

Buyer such documents or other instruments as may be necessary to assign and transfer the

Assumed Contracts to the Buyer, subject only to the Buyer's provision of a replacement surety

bond with regard to the Bonded Flooring Contracts as required in Finding of Fact L hereinabove.

      8.      The Assumed Contracts shall be all contracts so designated on the schedule of

Assumed Contracts attached to this Order as Exhibit A, as such schedule may hereafter be

amended by the Buyer to add certain contracts (i) where the non-debtor party (the "Objecting

Party") has timely filed an objection to the assumption and assignment of the contract; and

(ii) the Debtor and the Objecting Party have reached an agreement to allow the Buyer to assume

the contract. In the event of any such amendment to the schedule of Assumed Contracts, notice

of such amendment shall be filed with the Court and sent to all parties affected thereby, and such

contract shall become an Assumed Contract for purposes of this Order or the Asset Purchase

Agreement.

      9.      With respect to contracts on the schedule which contain a notation of "Objected

to" (the "Disputed Contracts"), the Objecting Party to such contract has filed or otherwise

indicated an objection to the assumption or assignment of such Disputed Contract to the Buyer.

The Buyer and the Objecting Party shall have ten (10) days from the date of this Order to resolve

any issues with respect to such objection. If such objection is resolved, the Debtor, the Buyer

and the Objecting Party shall file a notice so indicating such resolution, after which the Disputed

Contract will be deemed an Assumed Contract. If no such notice is filed by the above-

referenced deadline (or any extension of which that the parties may agree to, or that the Court

may order for cause shown), then the Disputed Contract shall not otherwise become an Assumed

- 11 -

Contract. In the alternative, the Buyer may file a notice requesting that the Court schedule a

hearing to resolve any such objection regarding a Disputed Contract. In such event, such

Disputed Contract will not be deemed rejected or assumed until further order of the Court after

notice and a hearing.

10.    The Buyer shall pay only the Cure Amounts under the Assumed Contracts as set

forth on Exhibit B hereto. Such payments shall be made as soon as practicable after Closing,

unless an objection needs to be resolved pursuant to the procedures set forth above. The Debtors

shall have no liability for the Cure Amount under any Assumed Contract, or for any postpetition

claims arising under such Assumed Contracts after the time that such Assumed Contracts are

assigned to Buyer.

11.    The Assumed Contracts shall, upon assignment to the Buyer, be valid, binding

and in full force and effect and enforceable in accordance with their terms, and, pursuant to

Section 365(k) of the Bankruptcy Code, the Debtors shall be relieved from any further liability

with respect to the Assumed Contracts after such assignment.

12.    Each non-Debtor party to an Assumed Contract is hereby barred and enjoined

from asserting against any Debtor or the Buyer any default existing as of the date of the Sale

Hearing if such default was not raised or asserted in response to the Sale Motion, and from

asserting any other objection to the assumption and assignment of such Assumed Contracts.

13.    Upon the consummation of the sale contemplated under the Asset Purchase

Agreement, all Liens and Claims on or against the Acquired Assets shall, without the necessity

of further action on the part of any creditor, be deemed released and discharged.

- 12 -

14.     This Sale Order (a) is and shall be effective as a determination that, on the

Closing Date and except as specially provided in the Asset Purchase Agreement, all Liens

existing on the Assets before the Closing have been unconditionally released, discharged and

terminated, and that the conveyance described in decretal paragraph 5 hereof has been effected,

and (b) is and shall be binding upon and govern the acts of all entities, including, without

limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages,

recorders of deeds, registrars of deeds, administrative agencies, governmental departments,

secretaries of state, federal, state, and local officials, and all other persons and entities who may

be required by operation of law, the duties of their office, or contract, to accept, file, register or

otherwise record or release any documents or instruments, or who may be required to report or

insure any title or state of title in or to any of the Assets.

15.     Each and every federal, state and local governmental agency or department

hereby is directed to accept any and all documents and instruments necessary and appropriate to

consummate the transactions contemplated by the Asset Purchase Agreement.

16.     If any person or entity other than Heller Financial, Inc., as agent ("Agent"), that

has filed financing statements or other documents or agreements evidencing Liens on or interests

in the Assets shall not have delivered to the Debtors prior to the Closing, in proper form for

filing and executed by the appropriate parties, termination statements, instruments of satisfaction,

or releases of all Liens or other interests which the person or entity has with respect to the

Assets, each Debtor is hereby authorized and directed to execute and file such statements,

instruments, releases and other documents on behalf of the person or entity with respect to the

Assets.

- 13 -

17.    All entities who are presently, or on the Closing Date may be, in possession of some or all of the Assets are hereby directed to surrender possession of said Assets to the Buyer on the Closing Date.

18.    As of the Closing Date, all agreements of any kind whatsoever and all orders of this Court entered prior to the date hereof shall be deemed amended and/or modified to the extent required to permit the consummation of the transactions contemplated by the Asset Purchase Agreement; notwithstanding the foregoing, nothing in this Order or the Asset Purchase Agreement shall modify the cash collateral orders of the Court.

19.    Except as otherwise expressly provided in the Asset Purchase Agreement or related instruments or as otherwise provided in this Sale Order, the Buyer shall have no liability or responsibility for any liability or other obligation of the Debtors arising under or related to the Assets other than for the Purchase Price.  Without limiting the effect of the foregoing, the transfer of the Assets and the assignment of the Assumed Contracts do not, and will not, subject the Buyer to any liability for claims against any Debtor or the Assets by reason of such transfer under the laws of the United States, any state, territory or possession thereof or the District of Columbia applicable to such transactions.  The Buyer shall not be deemed, as a result of any action taken in connection with the Asset Purchase Agreement, to: (i) be the successor of any or all of the Debtors; (ii) have, de facto or otherwise, merged with or into any or all of the Debtors; (iii) be a mere continuation or substantial continuation of any or all of the Debtors or the enterprise of any or all of the Debtors; or (iv) be responsible for any liability of any of the Debtors or for the payment of any benefit accruing to any of the Debtors, except as specifically provided for in the Asset Purchase Agreement.

- 14 -

20.    This Court retains jurisdiction (i) to enforce and implement the terms and provisions of the Asset Purchase Agreement, all amendments thereto, any waivers and consents thereunder, and each of the agreements executed in connection therewith, (ii) to compel delivery of the Assets to the Buyer, (iii) to enforce the assumption and assignment of the Assumed Contracts, (iv) to consider any further pending objections from the Objecting Party to the Disputed Contracts; (v) to resolve any disputes arising under or related to the Asset Purchase Agreement, except as otherwise provided therein, (vi) to resolve any disputes regarding the Cure Amounts for the Assumed Contracts; and (vii) to interpret, implement and enforce the provisions of this Sale Order.

21.    Nothing contained in (i) any plan or reorganization (or liquidation) confirmed in these cases, (ii) the order of confirmation confirming any such plan of reorganization (or liquidation), nor (iii) any order dismissing any case or converting it to a Chapter 7 liquidation shall conflict with, or derogate from, the provisions of the Asset Purchase Agreement, any document or instrument executed in connection therewith, or the terms of this Sale Order.

22.    The Buyer is a purchaser in good faith of the Assets and is entitled to all of the protections afforded by Section 363(m) of the Bankruptcy Code.

23.    In the absence of a stay, if the Buyer elects to close under the Asset Purchase Agreement at any time after entry of this Sale Order, then, with respect to the Asset Purchase Agreement, including the assumption and assignment of the Assumed Contracts approved and authorized herein, the Buyer shall be entitled to the protections of Section 363(m) of the Bankruptcy Code if this Sale Order or an authorization contained herein is reversed or modified on appeal.

- 15 -

24.     The terms and provisions of the Asset Purchase Agreement, together with the terms and provisions of this Sale Order, shall be binding in all respects upon, and shall inure to the benefit of, each of the Debtors, its estate and its creditors, the Buyer, and their respective affiliates, successors and assigns, and any affected third parties including, but not limited to, all non-debtor parties to the Assumed Contracts to be assigned to the Buyer pursuant to the Asset Purchase Agreement, and any person or persons asserting a claim against, or interest in, any Debtor's estate, or any of the Assets to be sold to the Buyer pursuant to the Asset Purchase Agreement, notwithstanding any subsequent appointment of any trustee for any one of the Debtors under any chapter of the Bankruptcy Code, as to which trustee such terms and provisions likewise shall be binding in all respects.

25.     The failure specifically to include any particular provisions of the Asset Purchase Agreement or any of the documents, agreements or instruments executed in connection therewith in this Sale Order shall not diminish or impair the efficacy of such provision, document, agreement or instrument, it being the intent of the Court that the Asset Purchase Agreement and each such document, agreement or instrument be authorized and approved in its entirety.

26.     The Asset Purchase Agreement and any related agreements, documents or other instruments may be modified, amended or supplemented by the parties thereto in accordance with the terms thereof without further order of the Court, provided that any such modification, amendment or supplement is not material and the party proposing said amendment has received the prior written consent of the Agent.

- 16 -

27.     Notwithstanding Bankruptcy Rule 6004(g), this Sale Order shall be effective and

enforceable immediately upon entry.

SO ORDERED, this **31** day of March, 2004.

_(signature)_

HONORABLE PAUL W. BONAPFEL
UNITED STATES BANKRUPTCY JUDGE

**Prepared and Presented By:**

ALSTON & BIRD LLP

By: _Matthew W. Levin / jat w/express permission_
MATTHEW W. LEVIN
Georgia Bar No. 448270
MARK I. DUEDALL
Georgia Bar No. 231770
JENNIFER MEYEROWITZ
Georgia Bar No. 503669

1201 West Peachtree Street
Atlanta, Georgia 30309-3424
(404) 881-7000

**Attorneys for Debtors in Possession**

WOMBLE CARLYLE SANDRIDGE & RICE, PLLC

By: _(signature)_
JOHN A. THOMSON, JR.
Georgia Bar No. 706760

One Atlantic Center, Suite 3500
1201 W. Peachtree Street
Atlanta, Georgia 30309
(404) 888-7409 direct phone
(404) 870-4841 direct fax

**Attorneys for Dynamic Sports Construction, Inc.**

*[Signatures of Counsel continue on next page]*

- 17 -

PARKER, HUDSON, RAINER & DOBBS LLP

By: _Rufus T. Dorsey / /at w/express permission_
    Rufus T. Dorsey
    Georgia Bar No. 226705

1500 Marquis Two Tower
285 Peachtree Center Avenue, N.E.
Atlanta, GA  30303
(404) 523-5300

**Attorneys for Heller Financial Corporation**


MORRIS, MANNING & MARTIN, LLP

By: _David W. Cranshaw / /at w/express permission_
    David W. Cranshaw
    Georgia Bar No.

1600 Atlanta Financial Center
3343 Peachtree Road, N.E.
Atlanta, GA  30326-1044
(404) 233-7000

**Attorneys for the Official Committee of Unsecured Creditors**


OFFICE OF THE UNITED STATES TRUSTEE

By: _Leroy Culton_
    Leroy Culton
    Georgia Bar No.170919

Richard Russell Federal Building
Room 362
75 Spring Street, S.W.
Atlanta, GA 30303
(404) 331-4437


- 18 -

# DISTRIBUTION LIST

Matthew W. Levin
Mark I. Duedall
Jennifer Meyerowitz
Alston & Bird LLP
1201 West Peachtree Street
Atlanta, Georgia 30309-3424


John A. Thomson, Jr.
Womble Carlyle Sandridge & Rice, PLLC
One Atlantic Center, Suite 3500
1201 W. Peachtree Street
Atlanta, Georgia 30309


Rufus T. Dorsey
Parker, Hudson, Rainer & Dobbs LLP
1500 Marquis Two Tower
285 Peachtree Center Avenue, N.E.
Atlanta, GA  30303


David W. Cranshaw
Morris, Manning & Martin, LLP
1600 Atlanta Financial Center
3343 Peachtree Road, N.E.
Atlanta, GA  30326-1044


Leroy Culton
Office Of The United States Trustee
Richard Russell Federal Building
Room 362
75 Spring Street, S.W.
Atlanta, GA 30303

ATLANTA 395011v4

# S T O L L | K E E N O N | & | P A R K | L L P

300 WEST VINE STREET  |  SUITE 2100  |  LEXINGTON, KENTUCKY 40507-1801
(859) 231-3000 PHONE  |  (859) 253-1093 FAX  |  WWW.SKP.COM

P. DOUGLAS BARR
859-231-3046
dbarr@skp.com

February 25, 2005

**VIA FAX AND REGULAR MAIL**
Robert J. Bonsignore, Esq.
Bonsignore & Brewer
23 Forest Street
Medford, MA  02155

     Re:    Allen, et al. v. Martin Surfacing, Inc., et al.

Dear Mr. Bonsignore:

     I have not heard back from you about the issues set forth in my letter dated February 21, 2005, in connection with the above-captioned case.  Likewise, I have not heard back from you in response to my telephone message.  My client, Dynamic Sports Construction, Inc., suffers in the competitive marketplace every day on account of the allegations contained in the Amended Complaint.  Certainly, it is not my purpose to diminish the ordeal that your clients have endured but, as set forth in my letter, Dynamic cannot be liable under any legal theory for the claims set forth in the Amended Complaint.

     Again, it is our hope to resolve this matter simply by having Dynamic dropped from the lawsuit, assuming it can be done quickly, so as to minimize the harm to Dynamic's business.  Mr. Wolesensky and I remain willing to meet with you to discuss these matters as soon as possible.  However, as I am sure you can appreciate, time is of the essence.

Robert J. Bonsignore, Esq.
February 25, 2005
Page 2


     Please call me as soon as possible to discuss this matter. Thank you in advance for your prompt attention.

                              Very truly yours,

                              STOLL, KEENON & PARK, LLP

                              P. Douglas Barr

cc:    Robert M. Wolesensky, Jr. (via fax)

# S T O L L | K E E N O N | & | P A R K | L L P

300 WEST VINE STREET | SUITE 2100 | LEXINGTON, KENTUCKY 40507-1801
(859) 231-3000 PHONE | (859) 253-1093 FAX | WWW.SKP.COM

P. DOUGLAS BARR
859-231-3046
douglas.barr@skp.com

August 10, 2005

**VIA FACSIMILE**
Robert J. Bonsignore, Esq.
Bonsignore & Brewer
23 Forest Street
Medford, MA 02155

Re:   Laura Allen, et al. v. Martin Surfacing, Inc., et al.

Dear Mr. Bonsignore:

As you know, the Court has set a Rule 16 conference in the above-captioned case and I believe this is a good time to revisit the issues I raised in my letter to you dated February 21, 2005. I never received a response to that letter, or to the phone messages I left you and, in light of the fact that it appears that this case is about to become active, I think now is the appropriate time to discuss those matters. I have attached a copy of my February 21 letter.

Again, it is clear that my client, Dynamic Sports Construction, Inc. has been included in this case improperly, as the Plaintiffs have no viable cause of action against Dynamic. My February 21 letter explained Martin Surfacing, Inc. was formed in early 2004 for the purpose of negotiating the acquisition of certain assets of Southwest Recreational Industries, Inc. and, when those negotiations did not bear fruit and Southwest went into bankruptcy in February, 2004, Martin Surfacing changed its name to Dynamic. Thus, my client was not in existence when the events described in the Amended Complaint occurred. Moreover, Dynamic acquired certain assets of Southwest, including the trade name, "Martin Surfacing," pursuant to an auction and Order in the Southwest bankruptcy. I previously sent you the bankruptcy court's April 1, 2004 Order, which shows that Dynamic acquired only certain assets – not the liabilities – associated with Southwest's flooring business.

Again, a reasonable investigation would have revealed all of the facts showing that Dynamic cannot possibly be liable for the claims set forth in the Amended

Robert J. Bonsignore, Esq.
August 10, 2005
Page 2

Complaint.  Moreover, a reasonable investigation following the receipt of my February 21 letter would have resulted in your voluntary dismissal of Dynamic, already.  If we are unable to resolve this matter and Dynamic has to expend resources to obtain a summary judgment, we will take appropriate action to seek the recovery of Dynamic's fees and expenses.

        Please call me at your earliest convenience.

                                    Very truly yours,

                                    STOLL, KEENON & PARK, LLP

                                    P. Douglas Barr

PDB\tss
Enclosure
cc:    Robert M. Wolesensky, Jr.
X:\LITIGATE\Dynamic Sports Construction - Inc - 106038\Allen - 120077\Bonsignore ltr 081005.doc

# STOLL | KEENON | & | PARK | LLP

300 WEST VINE STREET | SUITE 2100 | LEXINGTON, KENTUCKY 40507-1801
(859) 231-3000 PHONE | (859) 253-1093 FAX | WWW.SKP.COM

P. DOUGLAS BARR
859-231-3046
douglas.barr@skp.com

September 12, 2005

**VIA FEDERAL EXPRESS**
Robert J. Bonsignore, Esq.
Bonsignore & Brewer
23 Forest Street
Medford, MA 02155

      Re:   *Laura Allen, et al. v. Martin Surfacing, Inc., et al.*
           USDC Civil Action No. 4:05-CV-40048-FDS

Dear Mr. Bonsignore:

Enclosed please find the Rule 26 initial disclosures of defendants Dynamic Sports Construction, Inc. and Robert Wolesensky. I direct your attention to the documents that we have enclosed as part of our disclosures. Those documents demonstrate that Dynamic and Mr. Wolesensky are not proper defendants in this case. As I have on two separate occasions so far, I ask again that you voluntarily dismiss Dynamic and Mr. Wolesensky from this action.

As I have stated previously, the fundamentally flawed premise of your Amended Complaint is that Southwest Recreational Industries, Inc., somehow acquired the stock of the former Martin Surfacing, Inc., in 1999. I have advised you twice now that Southwest merely acquired certain *assets* of Martin Surfacing, Inc., including the right to use the name "Martin Surfacing." The shares of stock in the original Martin Surfacing were retained by Armstrong World Industries. Attached in our Rule 26 disclosures is a copy of the Asset Purchase Agreement between Southwest and Armstrong, dated June 22, 1999, which confirms all this. As I have mentioned previously, after the asset purchase, Armstrong changed the name of its "Martin Surfacing, Inc." to "Nitram" (Martin spelled backward) because it had sold to Southwest the right to use the Martin name.

Likewise, I have enclosed certified copies of records from the Texas Secretary of State's office showing that the second "Martin Surfacing, Inc." was formed on January

Robert J. Bonsignore, Esq.
September 12, 2005
Page 2

13, 2004 – long after the wrongdoing alleged in your Amended Complaint – and that it
subsequently changed its name to Dynamic.    These documents prove that the
defendant, Dynamic, did not even exist until 2004 – again, long after the events
described in the Amended Complaint.

I do not have any understanding as to why you would not respond to my earlier
correspondence.    Gareth Notis has informed me that this sort of treatment is not
standard practice in Massachusetts and, in fact, other counsel in this case have
endured similar unresponsiveness from you.    I hope there is some reasonable
explanation for this and that we will be able to discuss this matter some time before our
hearing on Friday.  In any event, Mr. Notis, Mr. Wolesensky and I will see you, we hope,
in Court on Friday.

I look forward to hearing from you.

Very truly yours,

STOLL, KEENON & PARK, LLP

P. Douglas Barr

cc:    Gareth W. Notis, Esq.
       Robert M. Wolesensky

Corporations Section
P.O.Box 13697
Austin, Texas 78711-3697



Roger Williams
Secretary of State

# Office of the Secretary of State

The undersigned, as Secretary of State of Texas, does hereby certify that the attached is a true and correct copy of each document on file in this office as described below:

Dynamic Sports Construction, Inc.
Filing Number: 800292110

| | |
|---|---|
| Articles of Incorporation | January 13, 2004 |
| Articles of Amendment | February 11, 2004 |
| Articles of Correction | February 18, 2004 |
| Change of Registered Agent/Office | March 01, 2004 |

In testimony whereof, I have hereunto signed my name officially and caused to be impressed hereon the Seal of State at my office in Austin, Texas on September 07, 2005.



Roger Williams
Secretary of State

**DSC-100677**

| Form 201<br>(revised 9/03)<br><br>Return in Duplicate to:<br>Secretary of State<br>P.O. Box 13697<br>Austin, TX 78711-3697<br>FAX: 512/463-5709<br><br>Filing Fee: $300 | <br><br>**Articles of Incorporation<br>Pursuant to Article 3.02<br>Texas Business<br>Corporation Act** | This space reserved for office use.<br><br>FILED<br>In the Office of the<br>Secretary of State of Texas<br><br>JAN 1 3 2004<br><br>Corporations Section |
|---|---|---|

## Article 1 — Corporate Name

The name of the corporation is as set forth below:

Martin Surfacing, Inc.

The name must contain the word "corporation," "company," "incorporated," or an abbreviation of one of these terms. The name must not be the same as, deceptively similar to or similar to that of an existing corporate, limited liability company, or limited partnership name on file with the secretary of state. A preliminary check for "name availability" is recommended.

## Article 2 — Registered Agent and Registered Office (select and complete A or B and complete C)

☐ A. The initial registered agent is an organization (cannot be corporation named above) by the name of:


OR

☒ B. The initial registered agent is an individual resident of the state whose name is set forth below:

| First Name | M.I. | Last Name | Suffix |
|---|---|---|---|
| Robert | M. | Wolesensky | Jr. |

C. The business address of the registered agent and the registered office address is:

| Street Address | City | State | Zip Code |
|---|---|---|---|
| 701 Leander Drive | Leander | TX | 78641 |

## Article 3 — Directors

The number of directors constituting the initial board of directors and the names and addresses of the person or persons who are to serve as directors until the first annual meeting of shareholders or until their successors are elected and qualified are set forth below:

| Director 1: First Name | M.I. | Last Name | Suffix |
|---|---|---|---|
| Robert | M. | Wolesensky | Jr. |

| Street Address | City | State | Zip Code |
|---|---|---|---|
| 701 Leander Drive | Leander | TX | 78641 |

| Director 2: First Name | M.I. | Last Name | Suffix |
|---|---|---|---|
|  |  |  |  |

| Street Address | City | State | Zip Code |
|---|---|---|---|
|  |  |  |  |

DSC-100678

| | | | |
|---|---|---|---|
| Street Address | City | State | Zip Code |
| | | | |

## Article 4 Authorized Shares

☒ A. The total number of shares the corporation is authorized to issue is **10,000**
and the par value of each of the authorized shares is $.01

**OR (You must select and complete either option A or option B, do not select both.)**

☐ B. The total number of shares the corporation is authorized to issue is_____
and the shares shall have no par value.

If the shares are to be divided into classes, you must set forth the designation of each class, the number of shares of each class, the par value (or statement of no par value), and the preferences, limitations, and relative rights of each class in the space provided for supplemental information on this form.

## Article 5 Duration

The period of duration is perpetual.

## Article 6 Purpose

The purpose for which the corporation is organized is for the transaction of any and all lawful business for which corporations may be incorporated under the Texas Business Corporation Act.

## Supplemental Provisions Information

Text Area: [The attached addendum, if any, is incorporated herein by reference.]

## Incorporator

The name and address of the incorporator is set forth below.

Name:

Robert M. Wolesensky, Jr.

| Street Address | City | State | Zip Code |
|---|---|---|---|
| 701 Leander Drive | Leander | TX | 78641 |

## Effective Date of Filing

☒ This document will become effective when the document is filed by the secretary of state.

**OR**

☐ This document will become effective at a later date, which is not more than ninety (90) days from the date of its filing by the secretary of state. The delayed effective date is _____

## Execution

The undersigned incorporator signs these articles of incorporation subject to the penalties imposed by law for the submission of a false or fraudulent document.

Signature of incorporator

DSC-100679

02/11/2004  13:28    2602870                    SRI SPORTS FLOORING                    PAGE  02/05

| Form 404<br>(revised 9/03) | | This space reserved for office use. |
|---|---|---|
| Return in Duplicate to:<br>Secretary of State<br>P.O. Box 13697<br>Austin, TX 78711-3697<br>FAX: 512/463-5709<br><br>**Filing Fee: $150** | **Articles of Amendment<br>Pursuant to Article 4.04,<br>Texas Business<br>Corporation Act** | **FILED<br>In the Office of the<br>Secretary of State of Texas<br><br>FEB 1 1 2004<br><br>Corporations Section** |

## Article 1 –Name

The name of the corporation is as set forth below:

MARTIN SURFACING, INC.

State the name of the entity as it is currently shown in the records of the secretary of state. If the amendment changes the name of the entity, state the old name and not the new name in Article 1.

The filing number issued to the corporation by the secretary of state is:  800292110

## Article 2—Amended Name

(If the purpose of the articles of amendment is to change the name of the corporation, then use the following statement)

The amendment changes the articles of incorporation to change the article that names the corporation. The article in the Articles of Incorporation is amended to read as follows:

The name of the corporation is (state the new name of the corporation below)

DYNAMIC SURFACING & EQUIPMENT, INC.

The name of the entity must contain an organizational ending or accepted abbreviation of such term. The name must not be the same as, deceptively similar to or similar to that of an existing corporate, limited liability company, or limited partnership name on file with the secretary of state. A preliminary check for "name availability" is recommended.

## Article 3 –Amendment to Registered Agent/Registered Office

The amendment changes the articles of incorporation to change the article stating the registered agent and the registered office address of the corporation. The article is amended to read as follows:

Registered Agent of the Corporation
(Complete either A or B, but not both. Also complete C.)

☐ A. The registered agent is an organization (cannot be corporation named above) by the name of:

OR

☐ B. The registered agent is an individual resident of the state whose name is set forth below.

| First Name | MI | Last Name | Suffix |
|---|---|---|---|
| | | | |

Registered Office of the Corporation (Cannot be a P.O. Box.)

| C. The business address of the registered agent and the registered office address is: | | | |
|---|---|---|---|
| Street Address | City | State | Zip Code |
| | | TX | |

DSC-100680

02/11/2004  13:28   2602870                SRI SPORTS FLOORING                PAGE  03/05

## Article 4 – Other Altered, Added, or Deleted Provisions

Other changes or additions to the articles of incorporation may be made in the space provided below. If the space provided is insufficient to meet your needs, you may incorporate the additional text by providing an attachment to this form. Please read the instructions to this form for further information on format.

Text Area (The attached addendum, if any, is incorporated herein by reference.)

## Article 5—Date of Adoption

The date of the adoption of the amendment(s) by the shareholders of the corporation, or by the board of directors where no shares have been issued is   February 2, 2004

## Article 6—Statement of Approval

The amendments to the articles of incorporation have been approved in the manner required by the Texas Business Corporation Act and by the constituent documents of the corporation.

### Effective Date of Filing

A. ☒  This document will become effective when the document is filed by the secretary of state.

**OR**

B. ☐  This document will become effective at a later date, which is not more than ninety (90) days from the date of its filing by the secretary of state. The delayed effective date is   _____

### Execution

The undersigned signs this document subject to the penalties imposed by law for the submission of a false or fraudulent document.

_____        2-11-04
Signature of Authorized Officer              Date

DSC-100681



**Office of the Secretary of State**
**Corporations Section**
**P.O. Box 13697**
**Austin, Texas 78711-3697**

FILED
In the Office of the
Secretary of State of Texas

FEB 1 8 2004

Corporations Section

# ARTICLES/CERTIFICATE OF CORRECTION

This correction by the undersigned corporation, limited liability company, or out-of-state financial institution is submitted pursuant to article 1302-7.01, Texas Miscellaneous Corporation Laws Act. In the case of a limited partnership, this certificate of correction is made pursuant to section 2.13, Texas Revised Limited Partnership Act. The undersigned entity seeks to correct a document which is an inaccurate record of the entity action, contains an inaccurate or erroneous statement, or was defectively or erroneously executed, sealed, acknowledged or verified, and for this purpose states the following.

## ARTICLE ONE

The name of the entity is    MARTIN SURFACING,, INC.

## ARTICLE TWO

The document to be corrected is the Articles of Amendment

that was filed in the Office of the Secretary of State on the following date:_____
2/11/04         .

## ARTICLE THREE        DSC-100682

The inaccuracy, error, or defect to be corrected is:

The correct amendment to the name is Dynamic Sports Construction, Inc. and NOT Dynamic Surfacing & Equipment, Inc.

## ARTICLE FOUR

As corrected, the inaccurate, erroneous, or defective portion of the document reads as follows:

The name of the corporation is Dynamic Sports Construction, Inc.

Martin Surfacing, Inc.
**Name of Entity**

By: _____
(A person authorized to sign on behalf of the entity.)

P.2

February 18, 2004

To:   Dynamic Sports Construction, Inc.
      Leander, Texas

From: Dynamic Sports Nutrition, Inc.

Dear Sir or Madam:

Please let this serve as notification that Dynamic Sports Nutrition, Inc. hereby consents to
allow Dynamic Sports Construction, Inc. to be registered as a Texas corporation and to
use the name in any other jurisdiction within the United States.

Please call me at 877-460-1704 if you have any questions.

Sincerely,

Brian H. Clapp
Dynamic Sports Nutrition, Inc.

DSC-100683



FILED
In the Office of the
Secretary of State of Texas

MAR 0 1 2004

Corporations Section



**Office of the Secretary of State**
**Corporations Section**
**P.O. Box 13697**
**Austin, Texas 78711-3697**

## CHANGE OF REGISTERED AGENT/REGISTERED OFFICE

1.   The name of the entity is <u>Dynamic Sports Construction, Inc.</u>

and the file number issued to the entity by the secretary of state is <u>800292110</u>

2.   The entity is: (Check one.)

☑ **a business corporation,** which has authorized the changes indicated below through its board of directors or by an officer of the corporation so authorized by its board of directors, as provided by the Texas Business Corporation Act.

☐ **a non-profit corporation,** which has authorized the changes indicated below through its board of directors or by an officer of the corporation so authorized by its board of directors, or through its members in whom management of the corporation is vested pursuant to article 2.14C, as provided by the Texas Non-Profit Corporation Act.

☐ **a limited liability company,** which has authorized the changes indicated below through its members or managers, as provided by the Texas Limited Liability Company Act.

☐ **a limited partnership,** which has authorized the changes indicated below through its partners, as provided by the Texas Revised Limited Partnership Act.

☐ **an out-of-state financial institution,** which has authorized the changes indicated below in the manner provided under the laws governing its formation.

3.   The registered office address as PRESENTLY shown in the records of the Texas secretary of state is <u>701 Leander Drive, Leander, TX 78641</u>

4.   ☑ A. The address of the NEW registered office is: (Please provide street address, city, state and zip code. The address must be in Texas.)

<u>301 Sonny Drive, Leander, TX 78641</u>

OR   ☐ B. The registered office address will not change.

5.   The name of the registered agent as PRESENTLY shown in the records of the Texas secretary of state is <u>Robert M. Wolesensky, Jr.</u>

6.   ☐ A. The name of the NEW registered agent is _____

OR   ☑ B. The registered agent will not change.

DSC-100684

ε·d

7.   Following the changes shown above, the address of the registered office and the address of the office of the registered agent will continue to be identical, as required by law.

By: _____

(A person authorized to sign
on behalf of the entity)

## INSTRUCTIONS

1.   It is recommended that you call (512) 463-5555 to verify the information in items 3 and 5 as it currently appears on the records of the secretary of state before submitting the statement for filing. You also may e-mail an inquiry to corpinfo@sos.state.tx.us. As information on out-of-state financial institutions is maintained on a separate database, a financial institution must call (512) 463-5701 to verify registered agent and registered office information. If the information on the form is inconsistent with the records of this office, the statement will be returned.

2.   You are required by law to provide a street address in item 4 unless the registered office is located in a city with a population of 5,000 or less. The purpose of this requirement is to provide the public with notice of a physical location at which process may be served on the registered agent. A statement submitted with a post office box address or a lock box address will not be filed.

3.   An authorized officer of the corporation or financial institution must sign the statement. In the case of a limited liability company, an authorized member or manager of a limited liability company must sign the statement. A general partner must sign the statement on behalf of a limited partnership. A person commits an offense under the Texas Business Corporation Act, the Texas Non-Profit Corporation Act or the Texas Limited Liability Company Act if the person signs a document the person knows is false in any material respect with the intent that the document be delivered to the secretary of state for filing. The offense is a Class A misdemeanor.

4.   Please attach the appropriate fee:

| | |
|---|---|
| Business Corporation | $15.00 |
| Financial Institution, other than Credit Unions | $15.00 |
| Financial Institution that is a Credit Union | $ 5.00 |
| Non-Profit Corporation | $ 5.00 |
| Limited Liability Company | $10.00 |
| Limited Partnership | $50.00 |

Personal checks and MasterCard®, Visa®, and Discover® are accepted in payment of the filing fee. Checks or money orders must be payable through a U.S. bank or other financial institution and made payable to the secretary of state. Fees paid by credit card are subject to a statutorily authorized processing cost of 2.1% of the total fees.

5.   Two copies of the form along with the filing fee should be mailed to the address shown in the heading of this form. The delivery address is: Secretary of State, Statutory Filings Division, Corporations Section, James Earl Rudder Office Building, 1019 Brazos, Austin, Texas 78701. We will place one document on record and return a file stamped copy, if a duplicate copy is provided for such purpose. The telephone number is (512) 463-5555, TDD: (800) 735-2989, FAX: (512) 463-5709.

Form No. 401
Revised 9/99

DSC-100685

# S T O L L    K E E N O N    &    P A R K    L L P

300 WEST VINE STREET  |  SUITE 2100  |  LEXINGTON, KENTUCKY 40507-1801
(859) 231-3000 PHONE  |  (859) 253-1093 FAX  |  WWW.SKP.COM

P. DOUGLAS BARR
859-231-3046
douglas.barr@skp.com

October 17, 2005


**VIA FACSIMILE & U.S. MAIL**
Robert J. Bonsignore, Esq.
Bonsignore & Brewer
23 Forest Street
Medford, MA 02155

      Re:    *Laura Allen, et al. v. Martin Surfacing, Inc., et al.*
             USDC Civil Action No. 4:05-CV-40048-FDS

Dear Mr. Bonsignore:

It has been a month since our Rule 16 conference with the Court. At that conference, I outlined the facts concerning our client, Dynamic Sports Construction, Inc., and explained in detail why Dynamic cannot possibly be liable to the Plaintiffs in this case. You indicated that you would review the documents I had provided and that, if you agreed, you would voluntarily dismiss Dynamic from the lawsuit.

As I have outlined for you in at least three previous pieces of correspondence February 21, August 10, and September 12, 2005, the fact that Dynamic remains in the lawsuit is harmful to Dynamic's business and we intend to get Dynamic dismissed as soon as possible. Naturally, the best way to do that is with a voluntary dismissal.

If I do not hear from you by October 24, 2005, I intend to prepare and file a motion for summary judgment asking the Court to dismiss Dynamic, on the grounds I've outlined to you several times now. If I have to put my client to that expense, however, I intend to ask the Court to impose sanctions in the form of reimbursement of attorney fees against you and your client. It is not my intention to seem overly aggressive but I have corresponded with you since February and not received even the courtesy of a response. I feel fairly certain that the Court will be inclined to impose sanctions, once we reveal our correspondence.

Again, please let me hear from you no later than October 24, 2005.

Robert J. Bonsignore, Esq.
October 17, 2005
Page 2

Very truly yours,

STOLL, KEENON & PARK, LLP

P. Douglas Barr

cc:    Gareth W. Notis, Esq.
        Robert M. Wolesensky
        Joseph M. Noone, Esq.