UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LAURA ALLEN, INDIVIDUALLY; And As ADMINISTRATRIX OF THE ESTATE OF DAN ALLEN; And AS NEXT FRIEND OF TAYLOR ALLEN AND DANIELLE ALLEN; And MARK ALLEN,<br><br>Plaintiffs;<br><br>v.<br><br>MARTIN SURFACING, INC.; MARTIN SURFACING, A Division of SOUTHWEST RECREATION; SOUTHWEST RECREATIONAL INDUSTRIES, INC., d/b/a MARTIN SURFACING; REED J. SEATON; ROBERT N. WOLESENSKY, JR.; DYNAMIC SPORTS CONSTRUCTION, INC.; AND DOES,<br><br>Defendants. | CIVIL ACTION<br>No.: 05-40048 |

## MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR RELIEF FROM COURT-IMPOSED DEADLINES, FOR STAY OF PROCEEDINGS AND FOR IMPOSITION OF SUBSTITUTE SCHEDULING ORDER

NOW COME PLAINTIFFS, by and through their counsel, and move this Honorable Court for RELIEF FROM THE DEADLINES set forth in the Scheduling Order, entered on or about September 19, 2005; for a STAY OF PROCEEDINGS; and for the IMPOSITION OF A SUBSTITUTE SCHEDULING ORDER.

In furtherance of this Motion, the plaintiffs state as follows:

1. On or about September 19, 2005, this Honorable Court entered a Scheduling Order, governing the initial proceedings in this case, particularly on six primary issues involving the naming of the proper parties to the action. That order called for a fair, but rigorous schedule, including:

   a. Requests for Admissions, Requests for Production, and Interrogatories to be served by November 23, 2005;

   b. All fact witness depositions pertaining to "phase one," to be completed by December 23, 2005;

   c. Motions to add parties, amend pleadings, or to assert new claims to be filed by January 13, 2006; and

   d. Dispositive motions (summary judgment, judgment on the pleadings, etc.) to be filed by January 13, 2006.

2. On many occasions in December of 2005, Atty. Alan Bell, a Florida attorney, who currently resides in both California and Florida, and whom referred the case to prior counsel, attempted to reach prior counsel to discuss the progress, and certain developments that he had made in the case;

3. none of his attempts to reach prior counsel were responded to, or otherwise acknowledged by said prior counsel;

4. during the same time period, Plaintiff Laura Allen attempted to contact prior counsel on several occasions to discuss the impending deadlines, the status of the case and other issues;

5. none of her attempts to reach prior counsel were responded to, or otherwise acknowledged by said prior counsel;

6. As the deadline dates under the Scheduling Order approached and passed, Mr. Bell attempted to reach prior counsel with more fervor.

7. None of those attempts to reach prior counsel were responded to, or otherwise acknowledged by said prior counsel;

8. Just after Christmas of 2005, prior counsel finally responded to Mrs. Allen, and told her that he was fed up with the constant interference in the way that he was prosecuting the case, and that he would be referring her case to another lawyer. This was the basis for the total breakdown of the attorney-client relationship.

9. On or about December 27, 2005, Mr. Bell attempted to contact prior counsel by telephone and email to discuss this issue.

10. Those requests went unanswered.

11. On or about December 28, 2005, Mr. Bell again attempted unsuccessfully to contact the prior counsel;

12. none of those attempts to reach prior counsel were responded to, or otherwise acknowledged by said prior counsel;

13. In the beginning of January of 2006, Mr. Bell attempted to assist Mrs. Allen with obtaining her file from prior counsel, and locating substitute counsel, to prosecute the within action.

14. **On** or about January 11, 2006, Mr. Bell wrote a letter to prior counsel "out of sheer frustration," because of numerous voice-mails and email messages that went un-responded to from both Mr. Bell and the client, and a complete breakdown of all relations between counsel, the referrer and the client. In that letter, Mr. Bell asked prior counsel for:

   a. An executed copy of the fee agreement, which was never sent to the client;

   b. A copy of the entire file;

   c. A complete accounting of certain funds that prior counsel was holding in trust;

   d. Identification of correct parties to the case; and

   e. A summary of the work done and status of the case.

15. That letter went un-responded to.

16. On or about that same day, Mr. Bell emailed prior counsel asking him to adjourn certain depositions until such time as successor counsel could be located, retained and substituted;

17. that communication went un-responded to.

18. On numerous occasions, the Plaintiffs requested that prior counsel file his withdrawal forthwith and return all files pertaining to all actions prior counsel represented the plaintiffs in, so that substitute counsel could file an appearance in his stead;

19. On or about January 19, 2006, prior counsel responded in writing to Mr. Bell and stated that he would withdraw in 14 days, and would return the file and other property to Mrs. Allen.

20. Later that day, Mr. Bell informed prior counsel that 14 days was unacceptable as time was truly of the essence and that there were certain impending depositions which would need to be handled one way or another. Mr. Bell asked prior counsel to withdraw on or before January 23, 2006, and to deliver the file by close of business the following day, January 24th.

21. Notwithstanding repeated requests for the immediate return of their file from prior counsel, he wrongfully retained the entire file as well as certain other property belonging to the plaintiff.

22. Numerous attempts were made to communicate the urgency of the return of the plaintiffs' files by Mr. Bell, as the referring attorney.

23. On or about January 23, prior counsel telephoned Mrs. Allen and left her a message, wishing her the best and stating that he could not deliver the files to the appointed place, because of a bad snow storm that was occurring.

24. Later that day, Mr. Bell sent prior counsel a letter reiterating the position that the files and withdrawal motion be delivered the following day, once the snow storm ended. This was by letter and by email.

25. On the following day, January 24th, prior counsel wrote an email to Mr. Bell telling him that the file still needed to be copied prior to its transfer, and, notwithstanding his communication of the prior day, he would have it delivered once it is copied at Staples.

26. On or about January 25, 2006, Mr. Bell had to resort to a threat of involving the Board of Bar Overseers in the issue. He communicated to prior counsel that the matter would be turned over to the Office of Bar Counsel if the files were not received by Mrs. Allen by 3:00 P.M. on January 27th.

27. The files did not arrive on that day, or over the weekend that followed.

28. Notwithstanding their numerous attempts to have prior counsel return the file and funds, it took a telephone call to the Board of Bar Overseers, Office of Bar

Counsel, and a resulting telephone call from Bar Counsel to prior counsel, to get him to transfer the file.

29. On January 30, 2006, Mr. Bell telephoned the Office of Bar Counsel and explained the situation. While his request for assistance was not considered a formal "Bar Complain," the nature of the allegations and exigent circumstances surrounding the issues were egregious enough for Attorney Ann Kaufman, Asst. Bar Counsel, to telephone prior counsel and to spur instant action.

30. Upon information and belief, the Office of Bar Counsel telephoned prior counsel, and as a result of that call, the files were delivered to Mrs. Allen's home the following day, January 31, 2006.

31. Prior counsel's refusal to apprise the plaintiffs or Mr. Bell of the current posture of the case, to return the file, and to take certain steps to complete tasks in an organized and timely manner have prejudiced the plaintiffs in the prosecution of this action;

**WHEREFORE,** the plaintiff in this case moves that this Honorable Court enter an **ORDER**:

1. VACATING the Scheduling Order, entered September 19, 2005;

2. SUSPENDING all proceedings for a period of 90 days, so that successor counsel can evaluate the merits of the claims, the propriety of the parties and the underlying issues of the case, prior to beginning discovery in earnest;

3. Setting forth new dates and deadlines consistent with the above.

      4.      Such other relief as this Honorable Court shall deem proper in the name of Justice.

Dated: February 8, 2006

          Respectfully Submitted,
          The Plaintiffs,
          By their counsel


          /S/ Michael R. Hugo
          Michael R. Hugo, BBO#243890
          Lopez, Hodes, Restaino, Milman & Skikos, LC
          95 Commercial Wharf
          Boston, Massachusetts 02110
          Phone: (617) 973-9777
          Fax:   (617)227-4006
          mhugo@lopez-hodes.com

          And


          /S/ Anthony Tarricone
          Anthony Tarricone  BBO# 492480
          Sarrouf, Tarricone & Fleming
          95 Commercial Wharf
          Boston, Massachusetts 02110
          Phone: (617) 227-5800
          Fax:   (617) 227-5470
          atarricone@stflaw.com