## UNITED STATES DISTRICT COURT
### FOR THE
### DISTRICT OF MASSACHUSETTS

_____
                                        )
LAURA ALLEN, INDIVIDUALLY; And As       )
ADMINISTRATRIX OF THE ESTATE            )
OF DANIEL ALLEN; And AS NEXT FRIEND     )
OF TAYLOR ALLEN AND DANIELLE            )
ALLEN; And MARK ALLEN,                  )
                                        )
                    Plaintiffs;         )        CIVIL ACTION
                                        )        No.: 05-40048-FDS
    v.                                  )
                                        )
MARTIN SURFACING, A Division of         )
SOUTHWEST RECREATIONAL                  )
INDUSTRIES; SOUTHWEST                    )
RECREATIONAL INDUSTRIES, INC., d/b/a    )
MARTIN SURFACING; RONALD L.             )
GLASS, As he is Trustee in Bankruptcy for )
Southwest Recreational Industries, Inc., And )
REED J. SEATON,                         )
                                        )
                    Defendants.         )
_____/


## PLAINTIFFS' UNOPPOSED MOTION TO FILE
## SECOND AMENDED COMPLAINT AND DEMAND FOR TRIAL BY JURY


PLAINTIFFS in the above captioned matter, through their counsel, Michael R. Hugo, of

the firm Lopez, Hodes, Restaino, Milman & Skikos, LC and Anthony Tarricone, of the firm

Sarrouf, Tarricone & Fleming, Move that this Honorable Court allow them to file the SECOND

AMENDED COMPLAINT AND DEMAND FOR TRIAL BY JURY, attached hereto as

"Exhibit A."

In support hereof, the Plaintiffs state that all parties who are currently unserved and participating in this case have been notified of this Motion, and none have opposed the allowance hereof.

Dated:  April 27, 2006

> Respectfully Submitted,
> The Plaintiffs,
> By their counsel
>
>  /S/ Michael R. Hugo
> Michael R. Hugo, BBO#243890
> Lopez, Hodes, Restaino, Milman & Skikos, LC
> 95 Commercial Wharf
> Boston, Massachusetts 02110
> Phone: (617) 973-9777
> Fax:    (617)227-4006
> mhugo@lopez-hodes.com
>
> and
>
>  /S/ Anthony Tarricone
> Anthony Tarricone BBO# 492480
> Sarrouf, Tarricone & Fleming
> 95 Commercial Wharf
> Boston, Massachusetts 02110
> Phone: (617) 227-5800
> Fax:    (617) 227-5470
> atarricone@stflaw.com

**CERTIFICATE OF SERVICE**

I, Michael R. Hugo, certify that on this 27th day of April, 2006, I caused all counsel of record to be served the within UNOPPOSED MOTION TO FILE A SECOND AMENDED COMPLAINT , via the Electronic Court Filing system.

> /S/   Michael R. Hugo

**UNITED STATES DISTRICT COURT**
**FOR THE**
**DISTRICT OF MASSACHUSETTS**

_____
                                                    )
**LAURA ALLEN, INDIVIDUALLY; And As**    )
**ADMINISTRATRIX OF THE ESTATE**         )
**OF DANIEL ALLEN; And AS NEXT FRIEND**  )
**OF TAYLOR ALLEN AND DANIELLE**         )
**ALLEN; And MARK ALLEN,**               )
                                                    )
                    **Plaintiffs;**     )          **CIVIL ACTION**
                                                    )          **No.: 05-40048**
  **v.**                                            )
                                                    )
**MARTIN SURFACING, A Division of**       )
**SOUTHWEST RECREATIONAL**                )
**INDUSTRIES; SOUTHWEST**                 )
**RECREATIONAL INDUSTRIES, INC., d/b/a**  )
**MARTIN SURFACING; RONALD L.**          )
**GLASS, As he is Trustee in Bankruptcy for** )
**Southwest Recreational Industries, Inc, And** )
**REED J. SEATON,**                       )
                                                    )
                    **Defendants.**      )
_____/


**SECOND AMENDED COMPLAINT AND DEMAND FOR TRIAL BY JURY**

**INTRODUCTION**

1.      Plaintiffs bring this civil action against Defendants Martin Surfacing. a division of

        Southwest Recreational Industries, Inc.; Southwest Recreational Industries. Inc. d/b/a

        Martin Surfacing, 701 Leander Drive, Leander, TX 78641; Ronald L. Glass, Trustee in

        Bankruptcy for  Southwest Recreational Industries, Inc., 701 Leander Drive, Leander, TX

        78641; (hereafter referred to jointly and severally as "Defendants") demanding damages,

        including punitive damages for the wrongful death of the late Daniel Allen.

2.      Each Plaintiff individually and/or in their representative role demands damages in an amount deemed just and reasonable. Demand is also made for all compensation available under the so-called Wrongful Death Statute G.L. c. 229, §2 et seq. including punitive damages in an amount or amounts deemed just and reasonable. Plaintiffs incorporate by reference and rely upon G.L. c. 229, §2 et seq.

3.      The Defendants negligence, gross negligence and/or breach of express and/or implied warranty (including but not limited to Article 2 of chapter 106) and/or violations of M.G.L. 93A (hereafter collectively referred to as "wrongful conduct") directly and proximately caused the Late Daniel Allen to suffer related injuries, exacerbation of pre-existing injuries that were quiescent prior to Defendants conduct (hereafter "injury" or "injuries") and/or other loss including wrongful death. In turn, each Plaintiff suffered related damages arising out of the illness and wrongful death of the Late Daniel Allen.

4.      The Defendants' wrongful conduct caused the late Daniel Allen to be exposed to toxic fumes, toxins, chemicals, volatile organic compounds and other hazardous and noxious airborne irritants and substances resulting from Defendants' processes and/or resurfacing of the "field house" floor at the College of the Holy Cross, Worcester Massachusetts (hereafter Holy Cross) during and/or subsequent to May of 2001.

5.      The late Daniel Allen was the former Holy Cross Head Football coach.

6.      Other losses suffered by Plaintiffs include the value of the loss of reasonably expected net income of the decedent, services, protection, care, assistance, society, companionship, comfort, guidance, counsel and advice. The Late Daniel Allen suffered extreme conscious pain and suffering, loss of net income, a diminution in earning capacity, exacerbation of a pre-existing condition, toxic poisoning, chronic fatigue, chemical

neuritis, neurological abnormalities, and associated psychological and emotional distress including his eventual wrongful death. Related funeral and burial costs were incurred.

7. The Decedent's spouse and children each suffered severe psychological trauma resulting from directly witnessing or experiencing the effects of Defendants' wrongful conduct and this witnessing or experiencing followed closely the happening of the negligent act, both in time and place. The Defendants engaged in grossly negligent conduct which resulted in the death of Daniel Allen, and punitive damages must be assessed in an amount not less than $5,000.

8. Plaintiff Laura Allen is a natural person and a resident of the Commonwealth of Massachusetts, Worcester County. She is a natural person residing at 2 Sawmill Drive, Westborough, Massachusetts 01581.

9. At all times relevant to this complaint, Laura Allen was the lawful wife of the late Daniel Allen and the mother of his only three children. The late Daniel Allen's children Mark Stewart Allen (DOB May 29, 1985), Taylor Benjamin Allen (DOB January 13, 1990) and Danielle Lee Allen (DOB July 19, 1992) were all minors during the period of his conscious pain and suffering and wrongful death.

10. Plaintiff Mark Allen is an adult child of Daniel and Laura Allen, and maintains this Action on his own behalf as a co-plaintiff.

11. On or about December 6, 2004, Plaintiff Laura Allen was appointed Executrix of the Estate of the late Daniel Allen by the Probate Court of the County of Worcester, Commonwealth of Massachusetts, Docket No. 04 P3148EP1. Plaintiff Laura Allen is duly authorized to maintain this action in that capacity.

12.     Laura Allen brings this action individually for her own loss and as the Executrix of the Estate the late Daniel Allen.

13.     Laura Allen also acts as the next best friend of  Taylor Allen and Danielle Allen. Each of these minor children of Laura Allen and the decedent reside with their mother in Westborough, Worcester County, Massachusetts.  All Plaintiffs demand, in addition to their share of the damages awarded to the statutory beneficiaries, to be given fair and reasonable compensation for their own individual claims for emotional distress.

14.     Defendant Reed J. Seaton, a resident of 11009 Pencewood Ct., Austin, TX  78750-3712 acted individually to cause the Plaintiffs' loss and was President and Director of Southwest Recreational Industries, Inc., 701 Leander Drive, Leander, TX 78641 at all times relevant in this Complaint.

15.     Defendant Southwest Recreational Industries, Inc. d/b/a Martin Surfacing, is a corporation with a principal place of business at 701 Leander Drive, Leander, TX 78641. As set forth in the next paragraph, Southwest Recreational Industries, Inc., is bankrupt.

16.     Defendant Ronald L. Glass is the Trustee in Bankruptcy for the Bankrupt Estate of Southwest Recreational Industries, Inc.; U.S. Bankruptcy Court for the Northern District of Georgia (Rome), Docket No. 04-40656-PWB.  Defendant. Ronald L. Glass has a principal place of business at Glass Ratner Advisory & Capital Group, 3391 Peachtree Road, Suite 330, Atlanta, Georgia 30326.

17.     The Defendants contracted with the College of the Holy Cross for certain goods and services, by which the Defendants were to have installed a new flooring system in the Holy Cross Field House (the "field house") during 2001.

18.   The Defendants knew, or in the exercise of reasonable care should have known, that the chemicals and solvents used in the vicinity of Daniel Allen were toxic to humans who were in proximity to the fumes and byproducts of those chemicals and solvents.

19.   At no time leading up to their commencement of the work referenced did the Defendants inform or warn any employees or agents of Holy Cross or the late Daniel Allen that the substances used and/or processes employed by them to resurface the field house floor pose a danger to the health of human beings occupying the building, or that they should take safety precautions, or leave the building during the resurfacing process because the substances and/or processes they would be using to resurface the field house floor pose a danger to the health of human beings occupying the building.

20.   Notwithstanding their knowledge of the dangers and their notice of the defect, during the course of refinishing the field house floor, the Defendants failed to take adequate measures to provide an adequate clean air supply, circulation or ventilation for the late Daniel Allen.

21.   While carrying out the refinishing work, the Defendants failed to warn or inform the late Daniel Allen in any manner of the volatile organic chemicals and/or the other toxic, hazardous, harmful or noxious airborne irritants and substances and/or processes they caused to be present.

22.   The defective product sold, installed, applied and used by the Defendants was used and installed in such a way as to make it avoidably unsafe, inasmuch as a simple warning and exclusion of unprotected people from the vicinity of the application would have avoided the consequences suffered by Daniel Allen.

23.   The conduct of the Defendants constituted gross negligence.

24.    The late Daniel Allen never knew anything about the fact that he was exposed to ultra-toxic chemicals until after he was exposed and became ill.

25.    While refinishing the field house floor the Defendants' employees utilized protective gear including facial masks.

26.    Certain constituents of the materials utilized by the Defendants to resurface the floor as above alleged contain chemicals and solvents such as Benzene and/or Isocyanates, which are classified as ultra-hazardous substances and/or processes in Massachusetts.

27.    When the late Daniel Allen questioned the air quality issues associated with the Defendants refinishing work, the Defendants' agents, servants and/or employees assured him in a grossly negligent manner that he was in no danger and was exposed to no risk.

28.    Subsequent air testing samples showed that the air at College of the Holy Cross field house contained chemical abnormalities related to the Defendants' hazardous products and refinishing application process.  This air testing confirmed the presence of Isophrone Diisocyanate as well as Benzene and other chemicals in the air.

29.    By reason of Daniel Allen's wrongful death, the Plaintiff reasonably and necessarily expended the sum of $30,000 for funeral expenses.

<u>**COUNT ONE**</u>
**General Negligence Claim**

30.    The Plaintiffs repeat and reallege each and every allegation contained in the foregoing and subsequent paragraphs inclusive of this Complaint, with the same force and effect as if expressly set forth herein.

31.    Despite their intimate knowledge regarding the dangers associated with exposure to Benzene and/or Isocyanates and/or the other volatile organic compounds and/or chemicals constituting or otherwise used in the application of their products, the

Defendants used these ultra-hazardous materials in the contained field house building and failed to warn Coach Allen directly or indirectly of the danger presented to building occupants during use of these hazardous products.

32.  Thus, in carrying out the refinishing of the field house floor, the Defendants engaged in negligent, grossly negligent conduct that resulted in the Plaintiffs' respective losses.

33.  The Defendants knew or in the exercise of reasonable and ordinary care should have known that certain products and application processes they used in the installation of the field house floor contained Benzene and/or Isocyanates, volatile organic compounds, and other toxic and neurotoxic materials.

34.  The Defendants should have taken reasonable steps to exclude persons who were unprotected from exposure to the toxic and neurotoxic materials they were using from the area of potential harm.

35.  The defendants failed to take reasonable steps, and breached their duty to Daniel Allen.

36.  As a direct result of the Defendants' failures to act and/or wrongful conduct, the late Daniel Allen suffered severe, permanent lethal personal injuries and consciously endured great pain and suffering.

**WHEREFORE**, as a result of the Defendants' negligent, grossly negligent conduct, the Plaintiffs each suffered loss as described and/or will continue to suffer loss for their rest of their lives and demand damages in an amount deemed just and reasonable together with interests and costs against each of the Defendants jointly or severally.

## COUNT TWO
## Negligent Failure to Warn

37.    The Plaintiffs repeat and reallege each and every allegation contained in the foregoing and subsequent paragraphs inclusive of this Complaint, with the same force and effect as if expressly set forth herein.

38.    The Defendants then failed to properly warn, eliminate, minimize, or supervise the application in such a way to provide for the safety and well being of Coach Allen. In doing so, the Defendants' wrongfully engaged in negligent and grossly negligent conduct.

39.    The danger presented by the toxic flooring and application/curing in issue was not obvious to the late Daniel Allen and the late Daniel Allen was not already aware of said danger.

40.    The Defendants provided no warning as to the toxicity in issue.  The adequacy of the warning was otherwise defective because it was unduly delayed, reluctant in tone and lacking a sense of urgency.

41.    The warning was otherwise defective because it was not comprehensible or conveyed to the average person and failed to convey a fair indication of the nature and extent of the danger to a reasonably prudent person.

42.    The warning was not provided to all persons who it is foreseeable will come into contact with and consequently be endangered by the product in issue. The Defendants had a duty to warn because they knew or should have known that the product in issue was dangerous and/or ultra hazardous.

43.    The risks in issue were known and/or reasonably foreseeable at the time of the sale and/or could have been discovered by way of reasonable testing prior to marketing the product.

44.     The Defendants at all times relevant hereto were engaged in the marketing, promotion, formulation, manufacture, marketing, distribution and sale of toxic gym flooring.

45.     Defendants engaged in wrongful conduct and are liable in tort to the Plaintiffs for reasons including, but not limited to, the following:

a.   The materials used to formulate the toxic gym flooring are unnecessarily dangerous and defective, unsafe and unreasonably dangerous for their intended and/or foreseeable uses.

b.   In designing the manufacturing and/or application and/or curing process, and/or in manufacturing, testing, inspecting, applying, distributing and/or as otherwise alleged in this complaint they put into the stream of commerce a product in such an unreasonably dangerous condition and/or a process so filled with risk and danger that it was likely to cause harm to persons thereof when being used for its intended use.

c.   In distributing, promoting and selling the unnecessarily dangerous product not accompanied by adequate warnings of the toxicity that was known or reasonably should have been known and by violating their duty and obligation to provide adequate warnings of the dangers known or which should have reasonably been known to persons coming in proximity.

d.   The product and process were and continue to be unaccompanied by proper warnings regarding all known or reasonably knowable potential side affects associated with the use of the unnecessarily dangerous product and the comparative nature, extent, severity, incidence and duration of such adverse affects.

e.  The warnings given do not accurately reflect the signs, symptoms, incidence, scope or severity of the side affects, or identify appropriate testing, monitoring or remedial action.

f.  The Defendants continue to negligently fail to communicate to persons coming in proximity or contracting with them information necessary for their purposes. This conduct placed and continues to place the consuming public at risk.

g.  The Defendants failed to perform and continue to refuse to perform adequate testing that would have shown that the unnecessarily dangerous product to be safe in a public location.

h.  As a result of this failure, full and proper warnings were not made and continue to not be made that would accurately and fully reflect the symptoms. scope and severity of health problems the unnecessarily dangerous toxic gym flooring can cause.

i.  Each of the Defendants knew that the unnecessarily dangerous product, which was manufactured and supplied by the Defendants, would be used without further inspection and study for such defects and that given the resources of the consuming public and the College of the Holy Cross any reasonably anticipated inspection would have failed to detect the defects and they were reasonable in relying on the Defendants for same.

j.  The Defendants and each of them expected and knew that their toxic gym flooring would be used as is. The toxic flooring was in fact received and applied without change in the condition in which it was first manufactured and sold.

k.  The late Daniel Allen was a foreseeable person and user of the flooring product and used the product in its intended manner and suffered serious harm because of said use.

l.  The unnecessarily dangerous toxic flooring manufactured and/or supplied by the Defendants are defective due to inadequate post-marketing warnings or instructions because, after the manufacturer knew or should have known of the toxicity and related risks of injury, they failed to provide adequate warnings to persons or consumers of the product and continued to aggressively promote the unnecessarily dangerous toxic flooring.

46.  As a direct and proximate cause of the defective warning accompanying the unnecessarily dangerous toxic flooring as manufactured and/or supplied by Defendants and as a direct and proximate cause of their wrongful conduct, carelessness, outrageous conduct and/or other wrong doings and actions as described herein, Plaintiffs suffered and will continue to suffer injury, harm and economic loss.

47.  The Defendants knew or reasonably should have known of the toxic flooring's defective nature, but continually failed to correct known defects.

48.  The Defendants as manufacturers and distributors had a duty to warn of risks, hazards and/or adverse reactions of which they knew or had reason to know are inherent in the use of its products.

49.  As a direct and proximate result of the defects in the warning accompanying the product sold and distributed by the Defendants, the late Daniel Allen was caused to seek medical attention, to undergo numerous diagnostic procedures for which Plaintiffs have incurred

expenses and will incur expenses and damages, which expenses are capable of precise calculation.

**WHEREFORE**, as a result of the Defendants' negligent failure to warn of all known or appreciable risks, the Plaintiffs each suffered loss as described and/or will continue to suffer loss for their rest of their lives and demand damages in an amount deemed just and reasonable, together with interests and costs against each of the Defendants jointly or severally

## COUNT THREE
## LOSS OF CONSORTIUM AND FOR OTHER
## RELIEF AVAILABLE UNDER G.L. c. 229

50. The Plaintiffs repeat and reallege each and every allegation contained in the foregoing and subsequent paragraphs inclusive of this Complaint, with the same force and effect as if expressly set forth herein.

51. Plaintiff Laura Allen resided with Daniel Allen prior to his death and was dependent upon said decedent for his reasonably expected net income, support and maintenance. She has otherwise suffered a related loss of consortium.

52. Mark Stewart Allen, Taylor Benjamin Allen, and Danielle Lee Allen were also dependent upon their father's income, services, protection, care, assistance, society, companionship, comfort, guidance, counsel and advice, at the time of the exposure related injury that resulted in his death, Dan Allen was 45 years of age, was in good health and was employed profitably as a college football coach.

53. Laura Allen herein acts as the next friend of Taylor Benjamin Allen and/or Danielle Lee Allen.

54. Mark Stewart Allen now acts on his own behalf in that he is no longer a minor, although at all relevant times, he was a minor.

55.   By reason of the Defendants' wrongful conduct, the decedent's wife and minor children, have been deprived of the decedent's net income, services, protection, care, assistance, society, companionship, comfort, guidance, counsel and advice, in their respective share in such estate, as the decedent might have reasonably accumulated during a natural life expectancy.

56.   As a result of the individual wrongful conduct of each Defendant, the wife and children of the late Daniel Allen have suffered a loss of financial support and consortium and decedent's net income, services, protection, care, assistance, society, companionship, comfort, guidance, counsel and advice and will continue to suffer a related loss for the rest of their life due to the injuries and wrongful death of the rate Daniel Allen.

**WHEREFORE**, as a result of the Defendants' negligent and grossly negligent conduct, the Plaintiffs each suffered loss as described and/or will continue to suffer loss for their rest of their lives and demand damages to make them whole. Plaintiffs demand judgment in an amount deemed just and reasonable, including punitive damages, for the wrongful death of the late Coach Daniel Allen, together with interests and costs against each of the Defendants jointly or severally.

## COUNT FOUR
### Conscious Pain and Suffering

57.   The Plaintiffs repeat and reallege each and every allegation contained in the foregoing and subsequent paragraphs inclusive of this Complaint, with the same force and effect as if expressly set forth herein.

58.   As a result of the Defendants' wrongful conduct, the decedent suffered related injury and eventually a wrongful death.  Prior to his death, the decedent endured great conscious pain and suffering for the three years leading up to his wrongful death.

**WHEREFORE**, as a result of the Defendants' negligent conduct, the Plaintiffs each suffered loss as described and/or will continue to suffer loss for their rest of their lives and demand damages to make them whole. Plaintiffs demand judgment in an amount deemed just and reasonable including punitive damages for the conscious pain and suffering of the late Daniel Allen, together with interests and costs against each of the Defendants jointly or severally.

**COUNT FIVE**
**Wrongful Death Caused by Grossly Negligent Conduct**

59.     The Plaintiffs repeat and reallege each and every allegation contained in the foregoing and subsequent paragraphs inclusive of this Complaint, with the same force and effect as if expressly set forth herein.

60.     The Plaintiff Laura Allen is entitled to and brings this action based upon the death of Daniel Allen, pursuant to the so-called "Wrongful Death Statute," M.G.L. Ch. 229, § 2 and demands all related damages contained therein as allowed by law.

61.     The actions of the Defendants that directly and proximately caused or resulted in the death of Daniel Allen were grossly negligent acts and as a result of said acts, caused Daniel Allen to be injured and was so wrongfully killed.

**WHEREFORE**, as a result of the Defendants' grossly negligent conduct, the late Daniel Allen was caused to die and the Plaintiffs each suffered loss as described and/or will continue to suffer loss for their rest of their lives and demand punitive damages. Plaintiffs demand judgment in an amount deemed just and reasonable including punitive damages for the wrongful death of the late Coach Daniel Allen, together with interests and costs against each of the Defendants jointly or severally.

## COUNT SIX
### Violation of M.G.L. c. 93A

62.    The Plaintiffs repeat and reallege each and every allegation contained in the foregoing and subsequent paragraphs inclusive of this Complaint, with the same force and effect as if expressly set forth herein.

63.    Defendants were engaged in trade or commerce as defined by Massachusetts General Laws, Chapter 93A.

64.    The Defendants do not maintain a place of business or keep assets within the Commonwealth of Massachusetts.

65.    The Defendants knowingly and willfully sold a defective product and also defectively installed that product, and in doing so violated M.G.L. c. 93A, § 2.

66.    Plaintiffs have been injured by reason of Defendants unfair or deceptive acts or practices.

**WHEREFORE,** as a result of the Defendants' willful or knowing unfair and deceptive acts or practices, the Plaintiffs each suffered loss as described and/or will continue to suffer Joss for their rest of their lives and demand damages to make them whole. Plaintiffs demand judgment in an amount deemed just and reasonable, trebled plus reasonable attorney fees together with interests and costs against each of the Defendants jointly or severally.

## COUNT SEVEN
### Wrongful Conduct

67.    The Plaintiffs repeat and reallege each and every allegation contained in the foregoing and subsequent paragraphs inclusive of this Complaint, with the same force and effect as if expressly set forth herein.

68.    The Defendants had a duty to perfom1 their refinishing work on the Holy Cross Field house floor with due care, in a good and workmanlike manner and in a manner which

would not harm the late Daniel Allen and/or to ensure that those using its ultra-hazardous products would not cause him harm.

69.    In carrying out their wrongful conduct, the Defendants breached their duty of due care to Plaintiffs by negligently training to perform, performing and/or supervising the refinishing work on the field house floor such that the late Dan Allen was exposed to hazardous chemical fumes, volatile organic compounds and other airborne substances from the work and was thereby caused to suffer injury and eventually wrongfully caused to die.

70.    In carrying out their wrongful conduct, the Defendants also failed to otherwise eliminate, minimize or warn of the risks posed by its toxic product and application process.

71.    The Defendants breached their duty of due care to Plaintiffs by negligently allowing their employees, agents or servants to use products containing, among other harmful volatile organic compounds or chemicals, Benzene and/or Isocyanates, in such close proximity to the late Daniel Allen and in such concentrated amounts without adequate measures to provide adequate air supply, air circulation, and air ventilation.

72.    The Defendants' wrongful conduct resulted in a breach of their duty of due care to Plaintiffs. Further wrongful conduct includes a failure to provide adequate protective barriers between their work and the late Daniel Allen.

73.    The Defendants further breached their duty of care to Plaintiffs because as a result of their wrongful conduct they failed to warn or instruct the late Daniel Allen or any other Holy Cross official of the hazards presented to them by exposures to Defendants' ultra-hazardous materials, volatile organic compounds and other airborne irritants during the resurfacing.

74.    The Defendants breached their duty of care by conducting their resurfacing in a poor, un-workmanlike and substandard manner.

75.    The Defendants further breached their duty of care because their wrongful conduct resulted in their failure to conduct their resurfacing work in compliance with applicable state and Occupational Safety Health Administration (OSHA) standards, industry, corporate and/or safe building laws, regulation and codes.

76.    As a direct and proximate result of the Defendants' wrongful conduct, the late Daniel Allen was exposed to fumes, toxins, chemicals, volatile organic compounds and other hazardous airborne irritants and substances and/or processes and was injured and caused to die thereby.

77.    As a direct and proximate result of the Defendants' wrongful conduct, the late Daniel Allen was caused to suffer severe personal injury, was caused to be disabled, was caused great pain of body and mind, was caused great emotional, psychological harm, was caused to incur great medical and hospital expenses and suffered a loss of earning capacity.

**WHEREFORE**, as a result of the Defendants' negligent and grossly negligent conduct, the Plaintiffs each suffered loss as described and/or will continue to suffer loss for their rest of their lives and demand damages to make them whole. Plaintiffs demand judgment in an amount deemed just and reasonable, including punitive damages for the wrongful death of the late Daniel Allen, together with interest and costs against each Defendant jointly or severally.

### COUNT EIGHT
**Strict Liability**

78.   The Plaintiffs repeat and reallege each and every allegation contained in the foregoing and subsequent paragraphs inclusive of this Complaint, with the same force and effect as if expressly set forth herein.

79.   In the ordinary course of their business, the defendants utilized toxic, dangerous and ultra-hazardous chemicals, solvents, materials and/or processes, and brought those chemicals, solvents, materials and/or processes into the area near the office of the late Daniel Allen.

80.   The ultra-hazardous chemicals, solvents, materials and/or processes were under the control of the Defendants at all relevant times.

81.   The business activities of the defendants related to the ultra-hazardous chemicals, solvents, materials and/or processes:

   a.   Consisted of a high degree of risk;

   b.   Established a likelihood that great harm would result from said business and activity;

   c.   Were not a matter of common usage;

   d.   Were ultra-hazardous activities or substances;

   e.   Were inappropriate to use or perform in close proximity to the late Daniel Allen.

82.   As such the Defendants are strictly liable in tort for all damages and injuries to the Plaintiffs that were a direct or proximate result of such business and activities.

83.   As a direct and proximate result of said business and activities of the Defendants, the late Daniel Allen was caused to suffer severe personal injuries, was caused to be disabled, was caused and will be caused great pain of body and mind, was caused great emotional and psychological harm, was caused to incur great medical and hospital expenses and suffered a loss of earning capacity and eventually wrongfully die.

84.    The late Daniel Allen's family members likewise suffered related loss.

**WHEREFORE**, as a result of the Defendants' negligent and grossly negligent conduct, the Plaintiffs each suffered loss as described and/or will continue to suffer loss for their rest of their lives and demand damages to make them whole. Plaintiffs demand judgment in an amount deemed just and reasonable including punitive damages for the wrongful death of the late Coach Daniel Allen, together with interests and costs against each of the Defendants jointly or severally.

## COUNT NINE
### Breach of Express Warranty

85.    The Plaintiffs repeat and reallege each and every allegation contained in the foregoing and subsequent paragraphs of this Complaint with the same force and effect as if expressly set forth herein.

86.    The Defendants and/or their agents or subcontracts expressly warranted to Holy Cross, the general public and the late Daniel Allen that the materials (and/or process) involved in the resurfacing of the Holy Cross field house were safe and fit for the use intended.

87.    The Defendants and/or their agents or subcontracts impliedly warranted to Holy Cross, the general public and the late Daniel Allen that the materials (and/or process) involved in the resurfacing of the Holy Cross field house were safe and fit for the use intended.

88.    The late Daniel Allen was a person whom the Defendants might have expected to use the refinished areas at College of the Holy Cross including all areas of the field house.

89.    The Defendants breached their warranties because the resurfacing  process and materials they used at College of the Holy Cross field house floor were ultra hazardous and/or unsafe and/or not of merchantable quality and/or unfit for their intended uses and purposes.

90.     The Plaintiffs and more specially, the late Daniel Allen were harmed and suffered loss after they reasonably relied on the warranties made by the Defendants.

91.     As a direct and proximate result of their reasonable reliance on Defendants warranties and as a direct and proximate breach of warranties by the Defendants, the late Daniel Allen was caused to suffer severe personal injury, related loss, and eventually suffer a wrongful death. He was also caused to be disabled, was caused great pain of body and mind, was caused great emotional and psychological harm, was caused to incur great medical and hospital expenses and suffered a loss of earning capacity and incur funeral expenses.

**WHEREFORE**. as a result of the Defendants' negligent and grossly negligent conduct, the Plaintiffs each suffered loss as described and/or will continue to suffer loss for their rest of their lives and  demand damages to make them whole. Plaintiffs demand judgment in an amount deemed just and reasonable including punitive damages for the wrongful death of the late Coach Daniel Allen, together with interests and costs against each of the Defendants jointly or severally.

## COUNT TEN
### Breach of Implied Warranty

92.     The Plaintiffs repeat and reallege each and every allegation contained in the foregoing and subsequent paragraphs of this Complaint, with the same force and effect as if expressly set forth herein.

93.      The Defendants impliedly warranted prior to, during and following the referenced resurfacing that College of the Holy Cross was fit for habitation, occupancy and use and would be reasonably safe during the application and curing period of its toxic flooring product.

94.     The Defendants expressly warranted prior to, during and following the referenced

resurfacing that College of the Holy Cross was fit for habitation, occupancy and use and

would be reasonably safe during the application and curing period of its toxic flooring

product.

95.     The Defendants knowingly and or willfully misrepresented the truth in this regard and

otherwise breached said warranties as the College of Holy Cross field house area was not

fit for habitation, occupancy and use and was unreasonably dangerous during and

following the refinishing process.

96.     The late Daniel Allen relied upon said warranties and had occupied and inhabited the

College of the Holy Cross field house to his detriment.

97.     As a direct and proximate result of the breach of warranty by the Defendants, the late

Daniel Allen was caused to suffer sever personal injury, was caused to be disabled, was

caused great pain of body and mind, was caused great emotional and psychological harm,

was caused to incur great medical and hospital expenses and suffered a loss of earning

capacity.

**WHEREFORE**, as a result of the Defendants' negligent, reckless conduct, the Plaintiffs each

suffered loss as described and/or will continue to suffer loss for their rest of their lives and demand

damages to make them whole. Plaintiffs demand judgment in an amount deemed just and reasonable

including punitive damages for the wrongful death of the late Coach Daniel Allen, together with

interests and costs against each of the Defendants jointly or severally.

## COUNT ELEVEN
### Negligent Infliction of Emotional Distress

98.    The Plaintiffs repeat and reallege each and every allegation contained in the foregoing and subsequent paragraphs of this Complaint, with the same force and effect as if expressly set forth herein.

99.    The late Daniel Allen's spouse and children each suffered severe psychological shock resulting from directly witnessing or experiencing the effects of Defendants' wrongful conduct.

100.    This witnessing or experiencing followed closely the happening of the negligent act, both in time and place.

101.    The Defendants' negligent conduct caused the Laura Allen and the Allen children and the late Daniel Allen to suffer severe emotional distress.

**WHEREFORE**, as a result of the Defendants' negligent and or intentional conduct, the Plaintiffs each suffered loss as described and/or will continue to suffer loss for their rest of their lives and demand damages to make them whole. Plaintiffs demand judgment in an amount deemed just and reasonable including punitive damages for the wrongful death of the late Coach Daniel Allen, together with interests and costs against each of the Defendants jointly or severally.

## COUNT TWELVE
### Intentional Infliction of Emotional Distress

102.    The Plaintiffs repeat and reallege each and every allegation contained in the foregoing and subsequent paragraphs of this Complaint, with the same force and effect as if expressly set forth herein.

103.    The Defendants engaged in extreme and outrageous conduct toward the Plaintiffs and the conduct was beyond the scope of acceptable conduct.

104.    The Defendants intended and/or knew or should have known that their extreme and outrageous conduct would likely result in the Plaintiffs' suffering of emotional distress.

105.   The Defendants' extreme and outrageous conduct caused Plaintiffs to suffer from

emotional distress of a nature that no reasonable person could be expected to endure.

**WHEREFORE**, as a result of the Defendants' negligent and or intentional conduct, the Plaintiffs

each suffered loss as described and/or will continue to suffer loss for their rest of their lives and

demand damages to make them whole. Plaintiffs demand judgment in an amount deemed just and

reasonable including punitive damages for the wrongful death of the late Daniel Allen, together with

interests and costs against each of the Defendants jointly or severally.

## COUNT THIRTEEN
### Defective Design, Manufacturing and Distribution

106.   The Plaintiffs repeat and reallege each and every allegation contained in the foregoing

and subsequent paragraphs of this Complaint, with the same force and effect as if

expressly set forth herein.

107.   When the product left the manufacturer, it was defective in that the gravity of danger

posed by the product was unacceptable according to the manufacturers own

specifications and minimum accepted industry standards, the likelihood of the defect was

such that danger would arise, the feasibility of a safer alternative was readily available,

the financial cost of an improved design was reasonable and is accepted by the

Defendants, and that the adverse consequences of the product would result in harm to the

Plaintiffs and that the adverse consequences could be eliminated by the Defendant.

108.   The manufacturing process used by the Defendant was defective as were the inspection

and testing.

109.   The propensity of the problem as sold when compared with those the Defendants

intended it to have admittedly results in the acceptance by the Defendant that the

deviation from the design rendered the product defective.

110.    The toxic flooring manufactured and/or supplied by the Defendants was placed into the stream of commerce in a defective and unreasonably dangerous condition and was unnecessarily dangerous.

111.    The toxic flooring manufactured and/or supplied by the Defendants was placed into the stream of commerce in an unnecessarily dangerous condition and was unreasonably dangerous and more dangerous than an ordinary consumer would expect.

112.    The toxic flooring manufactured and/or supplied by the Defendants was placed into the stream of commerce in an unnecessarily dangerous condition and more dangerous than the Defendants admit is a minimally acceptable condition.

113.    As set forth in this Complaint and otherwise, the Defendants knew or should have known of the defective and unnecessarily dangerous condition but continued to manufacture, market, promote, sell and represent to the consuming public, and general public that the unnecessarily dangerous toxic flooring was safe.

114.    They did this for the sole purpose of maximizing sales and profits at the expense of the public health and safety in conscience disregard of the foreseeable harm caused by the unnecessarily dangerous toxic flooring.

115.    As a result of Defendants' practices, Plaintiffs have suffered actual damages in that they have purchased and had implanted the unnecessarily dangerous toxic flooring, which are dangerous and defective and not fit for their intended purpose.

**WHEREFORE** as a result of the Defendants' negligent, reckless conduct, the Plaintiffs suffered loss and will continue to suffer loss for the rest of their lives and demand damages to make them whole for past and future loss to the maximum extent allowed under the law. Plaintiffs demand

judgment in an amount deemed just and reasonable, together with interests and costs against each of the Defendants.

## PRAYERS FOR RELIEF

116.    As a direct result of the Defendants' failures to act and wrongful conduct, the late Daniel Allen was caused to suffer severe and permanent personal injuries and eventually suffer a wrongful death. Each member of his family suffered other related loss including but not limited to a loss of consortium. Each Plaintiff individually and/or in their representative capacity demands judgment in an amount deemed just and reasonable as outlined above for their past and future loss. Each likewise makes demand to be made whole to the maximum extent allowed under the law together with interests, costs and punitive damages against each of the Defendants individually.

a.    As to each Plaintiffs' loss of consortium, they pray that damages for the spouse's loss of consortium and for each child's loss of companionship be awarded as separate parts of a single damage award;

b.    As to the loss of financial support to the presumed beneficiaries, each Plaintiff requests that they be awarded compensation for their loss as separate parts of a single damage award recovered for the benefit of all statutory beneficiaries;

c.    Because Laura Allen and each child suffered emotional distress in the form of severe psychological shock resulting from directly witnessing and experiencing the effects of the Defendants' wrongful conduct over the time period from exposure through the rapid deterioration and eventual death, said suffering not simply grief and anguish attendant upon the death of a family member but much more of the late Daniel Allen, each claims they be awarded their own individual damages;

d.  Laura Allen and each child requests that they be awarded the fair monetary value and/or the value of the reasonably expected net income of the decedent in accordance with the statutory scheme enunciated in G.L. c. 229, §2;

e.  Laura Allen and each child demands that they be awarded in a single sum damages for the conscious pain and suffering on the part of the decedent in accordance with G.L. c. 229, §6;

f.  Laura Allen and each child demands that they be provided with compensatory damages for the fair monetary value of the decedent's net income, services, protection, care, assistance, society, companionship, comfort, guidance, counsel and advice in accordance with G.L. c. 229, §2 and that these damages be held by the Executor/Administrator Plaintiff as Trustee for the statutory beneficiaries;

g.  Laura Allen and each child demands that they be provided with fair and reasonable funeral burial expenses incurred on behalf of the decedent in the amount of $30,000 pursuant to G.L. c. 229, §6A;

h.  Enter judgment in favor of Plaintiffs for actual damages and for all other relief, in an amount to be proved at trial, as to which they may be entitled, for interest, attorneys' fees, expert fees and costs of this suit;

i.  Award treble damages and/or punitive damages together with attorney fees and costs under 93A;

j.  Award prejudgment and post judgment interest as provided by law; and

k.  Enjoin the Defendants from selling their product in the Commonwealth without first eliminating, minimizing and warning of the danger presented; and

l.  Award such further relief, as this Court deems necessary, just, and proper.

## <u>DEMAND FOR TRIAL BY JURY</u>

The Plaintiffs hereby demand a jury trial as to all issues in this action.


Dated:  April 26, 2006

                                          Respectfully Submitted,
The Plaintiffs,
By their counsel

 _/S/ Michael R. Hugo_____
Michael R. Hugo, BBO#243890
Lopez, Hodes, Restaino, Milman & Skikos, LC
95 Commercial Wharf
Boston, Massachusetts 02110
Phone: (617) 973-9777
Fax:     (617)227-4006
mhugo@lopez-hodes.com

and

 _/S/ Anthony Tarricone _____
Anthony Tarricone BBO# 492480
Sarrouf, Tarricone & Fleming
95 Commercial Wharf
Boston, Massachusetts 02110
Phone: (617) 227-5800
Fax:     (617) 227-5470
atarricone@stflaw.com

### <u>CERTIFICATE OF SERVICE</u>

I, Michael R. Hugo, certify that on this 26th day of April, 2006, I caused all counsel of record to be served the within SECOND AMENDED COMPLAINT , via the Electronic Court Filing system.


                                    /S/    Michael R. Hugo_____