UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

LAURA ALLEN, INDIVIDUALLY; And As
ADMINISTRATRIX OF THE ESTATE
OF DANIEL ALLEN; And As NEXT FRIEND
OF TAYLOR ALLEN AND DANIELLE ALLEN;
And MARK ALLEN,

                    Plaintiffs

vs.                                                 No. 05-40048-FDS

MARTIN SURFACING, A Division of
SOUTHWEST RECREATIONAL
INDUSTRIES; SOUTHWEST RECREATIONAL
INDUSTRIES, INC., d/b/a
MARTIN SURFACING,

                    Defendants

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## DEFENDANTS' DAUBERT MOTION AND MEMORANDUM OF LAW FOR SUMMARY JUDGMENT
### and/or
## TO PRECLUDE PLAINTIFF'S EXPERT TESTIMONY OF CHRISTINE OLIVER[1]

Now comes the Defendant, Southwest Recreational Industries, Inc. (hereinafter

"Defendant") and hereby moves this Honorable Court to preclude the Plaintiff from

introducing expert witness Dr. Christine Oliver, and grant it summary judgment.

As reasons wherefore, the Defendant states the following:

---

[1] Thus motion was due per Court Order on November 1, 2007. Oliver's deposition was not scheduled due to her and counsels' schedule until November 2, 2007. Therefore the Defendant reserves its right to supplement the motion in its Reply Brief.

## CONCISE STATEMENT OF MATERIAL FACTS GENERALLY NOT IN DISPUTE VIEWED IN THE LIGHT MOST FAVORABLE TO THE PLAINTIFF PURSUANT TO LR 56.1

### I. Introduction

This is a toxic tort case. It arises from a wrongful death claim, pursuant to M.G.L. c.229 §2. The Plaintiff, Laura Allen, asserts that the death of her late husband, Daniel Allen, was hastened by the negligent and/or grossly negligent application of the gymnasium floor by the Defendant, in the field house at the College of the Holy Cross in late May early June 2001. See attached Plaintiff's Third Amended Complaint, "Exhibit A", hereinafter "Complaint". The plaintiffs make thirteen (13) claims against the Defendants as follows: General Negligence; Negligent Failure to Warn; Loss of Consortium and for Other Relief Available under G.L. c. 229; Conscious Pain and Suffering; Wrongful Death Caused by Grossly Negligent Conduct; Violation of M.G.L. c.93A; Wrongful Conduct; Strict Liability; Breach of Express Warranty; Breach of Implied Warranty; Negligent Infliction of Emotional Distress; Intentional Infliction of Emotional Distress; and Defective Design, Manufacturing and Distribution. Complaint.

Mr. Allen was diagnosed with ALS in January 2002 by Drs. Chad and Russell. See Rule 26 Opinion of Dr. Christine Oliver , attached as "Exhibit B", hereinafter "Oliver Opinion".

The National Institute of Neurological Disorders and Stroke define ALS as follows:

> Amyotrophic lateral sclerosis (ALS), sometimes called Lou Gehrig's disease, is a rapidly progressive, invariably fatal neurological disease that attacks the nerve cells *(neurons)* responsible for controlling voluntary muscles. In ALS, both the upper motor neurons and the lower motor neurons degenerate or die, ceasing to send messages to muscles. Unable to function, the muscles gradually weaken, waste away, and twitch. Eventually the ability of the brain to start and control voluntary movement is lost. Individuals with ALS lose their strength and

the ability to move their arms, legs, and body. When muscles in the diaphragm and chest wall fail, individuals lose the ability to breathe without ventilatory support. The disease does not affect a person's ability to see, smell, taste, hear, or recognize touch, and it does not usually impair a person's thinking or other cognitive abilities. However, several recent studies suggest that a small percentage of patients may experience problems with memory or decision-making, and there is growing evidence that some may even develop a form of dementia. *The cause of ALS is not known, and scientists do not yet know why ALS strikes some people and not others.* (emphasis supplied)

NINDS Amyotrophic Lateral Sclerosis Information Page, http://www.ninds.nih.gov/disorders/amyotrophiclateralsclerosis/amyotrophiclateralsclerosis.htm; see also Rule 26 Opinion of Dr. Marcia Oliver p.8-9, attached as "Exhibit D", hereinafter "Ratner Opinion".

Experts for both the plaintiffs and the defendant agree that there are two forms of ALS: familial, which compromises approximately 20% of ALS patients and is associated with genetics; and sporadic, which has no known case. Oliver Opinion p. 9. As Mr. Allen had no known family history of ALS, the plaintiffs' experts agree (and the defendants do not dispute) the decedent developed Sporadic ALS. Oliver Opinion p. 33, Oliver Opinion p.10.

The Defendants object to the testimony of Dr Christine Oliver based upon qualifications and Daubert standards and in accordance with the Federal Rules of Evidence. Oliver offers four opinions.[2]

## II. Opinions of Christine Oliver, MD

Dr. Oliver provides the Court with four separate. Of those four opinions, her opinion that states: "the time of onset and rate of progression of ALS in Mr. Allen's case were causally related to his exposure to solvent vapors and aerosols during the course of

---

[2] Two of Oliver's opinions are not disputed by the Defendant. They are "Mr. Allen had ALS and died as a result of his disease." Second, "Mr. Allen had sporadic ALS."

the installation of the Versaturf "360" flooring system in the field house of the college of the Holy Cross" utterly and completely fails a <u>Daubert</u> analysis. <u>Oliver Opinion</u> p.10.

Dr. Oliver also opines that "Southwest Recreational Industries, Inc., d/b/a Martin Surfacing, was negligent a) in its failure to warn Mr. Allen and other athletic staff of the potential toxicity of the chemicals used in the installation of Versaturf '360' polyurethane flooring system and b) in its failure to ensure that these personnel were either adequately protected or vacated from the Field House during the installation process." <u>Oliver Opinion</u> p. 13. She is simply not qualified to issue this legal opinion, and such opinion invades the province of the jury.

## **LEGAL ARGUMENT**

### I.      **Summary Judgment Standard**

Federal law controls the procedural aspects of a diversity case, and therefore the grant of summary judgment is controlled by Fed.R.Civ.P. 56, as interpreted in the federal courts. <u>Hammer v. Slater</u>, 20 F.3d 1137, 1140 (11th Cir. 1994).

The "judge's function" at the summary judgment stage is to determine whether there is a "genuine issue for trial." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." <u>Matsushita Electric Industrial Co. v. Zenith Radio Corp.</u>, 106 S.Ct.1348, 1356 (1986); accord <u>Liberty Lobby</u>, *supra* ("[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."). It follows that "some metaphysical doubt as to the material facts" will not suffice to forestall summary judgment. <u>Matsushita</u>, *supra.* Similarly, "[t]he mere existence of a scintilla of evidence in

4

support of the [non-moving party's] position will be insufficient." <u>Liberty Lobby</u>, 477 U.S. at 252.

## II.    <u>Expert Testimony is Required to Prove Medical Causation</u>

The question of whether expert testimony is required is a substantive one, and federal courts operating under diversity jurisdiction apply state law on the issue.  <u>In Re Paoli R.R. Yard PCB Litig.</u>, 35 F.3d 717, 751 (3d Cir. 1994).  In cases of medical causation, proof of causation must rest upon expert medical testimony as it is beyond the knowledge of the ordinary layman.  <u>Theresa Canavan's Case</u>, 432 Mass. 304, 316 (2000); <u>Hachadourian's Case</u>, 340 Mass. 81, 85 (1959).

For reasons set forth below, Oliver's opinion must be excluded pursuant to <u>Daubert</u>.  It is well established that where expert testimony is required, summary judgment must be granted on those claims for which the plaintiff is unable to provide such expert testimony.   See <u>Polaino v. Bayer Corporation</u>, 122 F.Supp.2d 63 (D.Mass 2000).  As the plaintiff has failed to produce expert testimony in regard to the issue of causation by the defendants, summary judgment must be granted.

## III.    <u>Gate Keeper Function of the Court Regarding Scientific Opinion Evidence</u>

When determining whether to admit expert testimony, the duty of trial judges is to play the role of "gatekeeper," insuring that fact-finding process does not become distorted by what is popularly called "junk science." <u>Whiting v. Boston Edison Company</u>, 891 F.Supp.12, 24 (D.Mass 1995); citing <u>O'Connor v. Commonwealth Edison Co.</u>, 807 F.Supp. 1376, 1391 (C.D.Ill. 1992).  This role is especially sensitive in cases where the plaintiff claims that exposure to toxic substance caused his injury as a jury

may blindly accept expert's opinion that conforms with their underlying fears of toxic substances without carefully understanding or examining basis for that opinion. Id.

In Daubert v. Merrell Dow Pharmaceuticals, Inc.,the Supreme Court established guidelines for district courts to use in determining the admissibility of expert testimony pursuant to Rules 702 and 104 of the Federal Rules of Evidence (FRE). Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993). Although it recognized that the evaluation of expert testimony is generally left to juries, the Court emphasized the trial judge's "gatekeeping" role with respect to expert proof on scientific issues. Id. at 597-98 (citing FRE 104(a)).

Currently two gateposts frame the exercise of a judge's discretion. First a witness must be shown to be sufficiently qualified by "knowledge, skill, experience, training, or education" before he will be permitted to give expert testimony. Whiting at 24, quoting Fed.R.Evid. 702. Second, the court must establish "any and all scientific evidence admitted is not only relevant, but reliable." Id. quoting Daubert at 589.

To qualify as an expert under Rule 702, a witness must first establish his expertise by reference to "knowledge, skill, experience, training, or education." Fed. R. Evid. 702. Although this requirement has always been treated liberally, liberal interpretation of this requirement "does not mean that a witness is an expert simply because he claims to be." In re Paoli RR Yard PCB Litigation, 916 F.2d 829, 855 (3d Cir. 1994).

Although there is no single criterion for determining whether a specific scientific methodology is reliable, the Daubert Court identified several factors that a district court

should consider when evaluating the scientific validity of expert testimony, notably: the testability of the expert's hypotheses (whether they can be or have been tested), whether the expert's methodology has been subjected to peer review, the rate of error associated with the methodology, and whether the methodology is generally accepted within the scientific community. Daubert at 593-94.

In addition to requiring that a proposed expert's testimony be "reliable," Rule 702 requires that the expert's testimony assist the trier of fact. This requirement has been interpreted to mean that scientific testimony must "fit" the facts of the case, that is, there must be a connection between the scientific research or test result being offered and the disputed factual issues in the case in which the expert will testify. Daubert at 592. In short, under Daubert and its progeny, a party proffering expert testimony must show by a "preponderance of proof" that the expert whose testimony is being offered is qualified and will testify to scientific knowledge that will assist the trier of fact in understanding and disposing of issues relevant to the case. Id. at 592.

Finally, the goal of Daubert has been to bring more rigorous scientific study into the expression of legal opinions offered in court by scientific and medical professionals. Allen v. Pennsylvania Engineering Corp.,102 F.3d 194, 198 (5th Cir. 1996).

IV.    **Dr. Oliver Does Not Have Sufficient Knowledge, Skills, Experience, Training or Educations Related to the Subject Matter at Hand, and Therefore Are Not Qualified to Provide an Expert Opinion**

Dr. Oliver does not have sufficient knowledge, skills, experience, training, or educations related to the subject matter at hand, and therefore are not qualified to make an expert opinion.

Federal Rule 702 provides: if scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise. <u>Akerson v. Falcon Transport Co.</u>, Slip Copy 2006 WL 3377940, 4 (D.Me. 2006);<u>Taylor v. Airco, Inc.</u>, 494 F.Supp.2d 21, 22 (D.Mass. 2007).

A witness must be qualified in the *specific* subject for which his testimony is offered. <u>Whiting</u> at 24. "Just as a lawyer is not by general education and experience qualified to give an expert opinion on every subject of the law, so too a scientist or medical doctor is not presumed to have expert knowledge about every conceivable scientific principle or disease." <u>Id.</u>

The advisory committee notes, regarding Fed. R. Evid. 702, explain other factors that a court may consider, including: (1) whether the experts are "proposing to testify about matters growing naturally and directly out of research they have conducted independent of litigation, or whether they have developed their opinions expressly for the purpose of testifying; (2) whether the expert has unjustifiably extrapolated from an accepted premise to an unfounded conclusion; (3) whether the expert has adequately accounted for obvious alternative explanations. FED. R. EVID. 702 advisory committee's notes.

## A. Educational Qualifications

Oliver's knowledge with regard to ALS does not rise to the level of an expert. Dr. There is no evidence expressed in Oliver's Rule 26 disclosure that she performed any research or participated in studies regarding ALS. *See generally* <u>Oliver</u>. Dr. Oliver's

8

only experience with ALS has been what she has studied during her educational training. *See generally* <u>Oliver</u>.

Dr. Oliver appears to be in the position anticipated by the advisory committee while drafting FRE 702, that is, she is an expert hired to testify in regard to a novel theory that she had culminated specifically for this litigation. Advisory Committee Notes to Fed.R.Evid. 702. Dr. Oliver's experience cannot be proficient as anticipated by Daubert to form such a nuanced theory on a disease she has not studied extensively.

Oliver is a specialist in pulmonary disease at the Massachusetts General Hospital. See attached Dr. Oliver's Curriculum Vitae, "Exhibit H", hereinafter "<u>Curriculum</u>". She is an assistant clinical professor at Harvard Medical School and President of her own consulting firm, Occupational Health Initiatives Brookline. <u>Curriculum</u>. She is the chairwoman of the Asthma Treatment Subgroup of the Massachusetts Department of Industrial Accidents and a member of the Massachusetts Healthcare Services Board. <u>Curriculum</u>. She is not a specialist or an expert in any neurodegenerative disease or disorder. <u>Curriculum</u>. She is not a neuro-toxicologist nor is she a molecular neurobiologist. <u>Curriculum</u>. She has testified frequently with regard to pulmonary issues, most frequently involving asthma, asbestos related diseases, pleural diseases, mesathelioma, but not ALS. <u>Curriculum</u>. She has never contributed to any text or any publication on the topic of toluene. <u>Curriculum</u>. She has never provided any instructions specifically on the topic of toluene. <u>Curriculum</u>. She is not an epidemiologist. <u>Curriculum</u>. She has never offered any epidemiological studies. *See generally* <u>Oliver's Opinion</u>.

Further, Oliver is not an attorney. <u>Curriculum</u>. Yet she opines that "Southwest Recreational Industries, Inc., d/b/a Martin Surfacing, was negligent a) in its failure to warn Mr. Allen and other athletic staff of the potential toxicity of the chemicals used in the installation of Versaturf '360' polyurethane flooring system and b) in its failure to ensure that these personnel were either adequately protected or vacated from the Field House during the installation process." <u>Oliver Opinion</u> p. 13.  She is simply not qualified to issue this legal opinion, and it invades the province of the jury. Under Rule 704, an expert can be allowed to testify as to an ultimate issue in a case. However, testimony which is nothing more than a "legal conclusion" is inadmissible. <u>Shahid v. City of Detroit</u>, 889 F.2d 1543, 1547 (6th Cir. 1989).  In abolishing the antiquated common law prohibition against experts addressing ultimate issues, the rule is not intended to mean that expert witnesses could instruct the jury about the result that should be reached, or supplant the judge's role of instructing the jury as to the applicable law. *See generally* <u>Fund of Funds, Ltd. v. Arthur Andersen & Co.</u>, 545 F. Supp. 1314 (S.D.N.Y. 1982).

"Application of the legal cause standard to the circumstances of a particular case is a function ordinarily performed by, and peculiarly within the competence of, the factfinder." <u>Marshall v. Perez Arzuaga</u>, 828 F.2d 845, 850-51 (1st Cir. 1987); <u>Springer v. Seamen</u>, 821 F.2d 871, 876 (1st Cir. 1987) ("[n]ot only ordinary fact questions, but also 'evaluative applications of legal standards ... to the facts' are properly [for the factfinder]") (citations and footnote omitted). The Massachusetts cases are to like effect. See, e.g., <u>Irwin v. Town of Ware</u>, 392 Mass. 745 (1984); <u>Mullins v. Pine Manor College</u>, 389 Mass. 47 (1983). Oliver is not an attorney admitted to practice law in the Commonwealth of Massachusetts (or the First District) nor does she have a law degree.

Even she had such qualifications the fourth opinion is a gratuitous offer on the ultimate issue in dispute, and thus inadmissible. The question regarding the ultimate issue is reserved for the trier of fact.

### B.  Dr. Oliver does not have sufficient knowledge to support her theory

Expert testimony has no capacity to be of assistance to a jury in resolving the ultimate issues if it is ground on speculation shaped by result-oriented biases or is merely a hypothesis. <u>Whiting</u> at 25. The purpose of excluding speculative evidence is well explained by the court in <u>Johnston</u>:

> "A hypothesis is synonymous with a theory.  Consequently, any hypothesis or theory is not fact until it has been scientifically proven.  Anyone who has been trained in the scientific method realizes that a hypothesis is a scientist's educated speculation… It is important to underscore again that a court of law is not a scientific experiment.  When a court of law determines responsibility for human suffering and awards damages, it must do so based upon reasonable evidence, not just speculation or hypothesis.  Just because scientists use hypotheses to describe something they really don't know for sure does not justify a court of law in using speculative hypotheses to determine that one person has caused harm to another." <u>Whiting</u> at 25 quoting <u>Johnston v. United States</u>, 597 F.Supp.374, 393-4 (D.Kan.1984).

Thus, Oliver's reliance upon Ratner's theory, which does not satisfy <u>Daubert</u>, exposes her lack of knowledge sufficient to support her theory.

### 1.     General Causation

**Dr. Oliver's opinion is nothing more than a speculative hypothesis, and should therefore be precluded.**

General causation simply means that the substance at issue, (in this case toluene), is capable of causing the condition alleged. <u>Daubert.</u>  In <u>Allen v. Pennsylvania Engineering Corp.</u>, the 5th circuit precluded expert testimony offered to support a wrongful death claim based upon an alleged occupational chemical exposure. <u>Allen v.</u>

11

Pennsylvania Engineering Corp.,102 F.3d 194 (5th Cir. 1996). The Allen Court held:

"Where, as here, no epidemiological study has found a statistically significant link

between EtO exposure and human brain cancer; the results of animal studies are

inconclusive at best; and there was no evidence of the level of Allen's occupational

exposure to EtO, the expert testimony does not exhibit the level of reliability necessary to

comport with Federal Rules of Evidence 702 and 703, the Supreme Court's Daubert

decision." Id. The Court added: "the fact that EtO has been classified as a carcinogen by

agencies responsible for public health regulations is not probative of the question whether

Allen's brain cancer was caused by EtO exposure." Id. The Allen holding is directly on

point here where there is absolutely no epidemiological study that has found a

statistically significant link between toluene exposure and ALS.

        Although animal studies may of some relevance in certain cases, in Brock v.

Merrill-Dow Pharmaceuticals, Inc., 874 F.2d 307, 311 (5th Cir.1989), modified by 884

F.2d 166 (5th Cir.1989), cert. denied, 494 U.S. 1046 [110 S.Ct. 1511, 108 L.Ed.2d 646]

(1990) the 5th circuit noted "the very limited usefulness of animal studies when

confronted with questions of toxicity." Brock, 874 F.2d at 313. Brock outlines a number

of reasons why studies of the effects of chemicals on animals must be carefully qualified

in order to have explanatory potential for human beings. Reliance on animal studies (if

they exist) for the neurotoxic effect of toluene upon Mr. Allen is therefore only

speculative support for the plaintiff's causation theory.

12

## 2.     The Opinion of Dr. Oliver does not assist the Trier of Fact

In order to be admissible, the expert testimony offered by the plaintiff must assist

the jury, by providing it with relevant information, necessary to a reasoned decision of

the case. Magistrini, 180 F. Supp. 2d at 595 (quoting U.S. v.Velasquez, 64 F.3d 844, 850

(3d Cir. 1995) ("The ultimate touchstone of admissibility is helpfulness to the trier of

fact."); In re Rezulin, 369 F. Supp. 2d at 420 (this consideration is bound up with the

relevancy requirement described in Daubert as one of "fit"); see also In re Paoli R.R.

Yard PCB Litig., 35 F.3d 717, 743 (3d Cir. 1994) ("The standard for fit is higher than

bare relevance"). Scientific expert testimony introduces special dangers to the fact-

finding process because it "can be both powerful and quite misleading because of the

difficulty in evaluating it." Daubert, 509 U.S. at 595 (internal quotation marks and

citation omitted). Therefore, "federal judges must exclude proffered scientific evidence

under Rule 702 unless they are convinced that it speaks clearly and directly to an issue in

dispute in the case, and that it will not mislead the jury." Cloud v. Pfizer, Inc., 198 F.

Supp. 2d 1118, 1130 (D. Ariz. 2001) (citing Daubert II, 43 F.3d at 1321).

Dr. Oliver can not express her "theory" of general causation in terms which would

assist the trier of fact in this matter. Assuming arguendo Dr. Oliver's speculative theory

with regard to general causation is true, that is, that exposure to toluene at sufficient

concentrations and durations could hasten the course of ALS, Dr. Oliver has failed to

prove the duration or concentration to which Mr. Allen was exposed, and therefore

cannot prove that they were sufficient to cause toxic effects.  Thus, it should be stricken.

*See generally* Allen.

### 3.    Specific Causation

Specific Causation simply means that the substance in fact caused the injury. Id. The court should not admit opinion evidence that is "connected to existing data only by the *ipse dixit* of the expert.  A court may conclude that there is simply too great an analytical gap between the data and the opinion preferred."  Polaino v. Bayer Corporation, 122 F.Supp.2d 63, 67 (D. Mass 2000); quoting General Electric Co. v. Joiner, 522 U.S. 136, 146 (1997).  "Rather, trial judges may evaluate the data offered to support an expert's bottom-line opinions to determine if that data provides adequate support to mark the expert's testimony as reliable."  Id. quoting Ruiz-Troche v. Pepsi Cola of Puerto Rico Bottling Co., 161 F.3d 77, 81 (1st Cir. 1998).

Where an expert witness testifies that a causal relationship is "possible," "conceivable" or "reasonable," that opinion, standing alone, does not satisfy a plaintiff's burden of adducing legally sufficient proof that a fact is more likely true than not.  Id. citing Rotman  v. National Railroad Passenger Corp., 41 Mass.App.Ct. 317, 320 (1996).

Oliver opines, and the defendants dispute : "In my opinion, the time of onset and rate of progression of ALS in Mr. Allen's case were causally related to his exposure to solvent vapors and aerosols during the course of the installation of the Versaturf "360" flooring system in the field house of the college of the Holy Cross."

### A.    There is no material fact in record that quantifies the level or duration of Mr. Allen's exposure to toluene

Expert testimony should not be based upon temporal proximity and anecdotal evidence. Allison v. McGhan Med. Corp., 184 F.3d 1300, 1312 (11th cir. 1999).  Oliver's opinion states as follows;:"Thus, the nature of Mr. Allen's symptoms and the distinct temporal relationship between their onset and persistence and the installation of the

Versaturf '360 flooring system are consistent with and make likely a causal association.";
Oliver p.11.  This is precisely the type of speculative guesswork that is inadmissible. Id.

In this case, there is no direct evidence of the level of Allen's exposure to
Toluene.  The Allen court rejected purported expert opinion that relied not on quantitative
empirical data, but on anecdotal evidence such as witness description of odors emitted
during the refinishing process. The Oliver/Ratner opinion relies principally on the
affidavit of Holy Cross coworkers and testimony of former Martin Surfacing employees
concerning the refurbishing of the gym floors where Allen worked.   Further, as also
rejected in Allen, extrapolations of Toluene vapors allegedly present as suggested by
Ewing did not satisfy Daubert. Allen at 198.

Scientific knowledge of a harmful level of exposure to a chemical, plus
knowledge that the plaintiff was exposed to such quantities, are minimal facts necessary
to sustain the plaintiffs' burden in a toxic tort case. Allen at 199.  Not only is the
scientific knowledge absent, but Oliver's background information concerning Allen's
exposure to Toluene is so sadly lacking as to be mere guesswork. Allen at 199.  Neither
Ratner nor Oliver rely on empirical data concerning Allen's exposure that suffices to
sustain their opinion under Fed. R. 703. Christophersen v. Allied-Signal Corp., 939 F.2d
1106, 1114 (5th Cir. 1991)(holding that the district court did not abuse its discretion in
excluding an expert's opinion that was based on insufficient data regarding the dosage of
a harmful substance and the duration of exposure to that substance); Allen at 199.

Allison further holds that Oliver's opinion that states "these are two of the
cornerstones to the determination of exposure-related disease in occupational medicine:
consistency of symptoms and clinical manifestation with what would be expected to

15

occur in association with a given exposure and a temporal association between onset/worsening of symptoms and that exposure" Oliver p. 11, is exactly the type of circular logic that has been consistently rejected by this Court. *See* Anello et al v. Shaw Industries, Inc., C.A. No. 95-30234-FHF (Memorandum and Order dated March 31, 200). After all, Oliver's opinion is a symptom based diagnostic label attached to Mr. Allen who suffered multiple symptoms generally suggested to result from a depression in his immune system caused by exposure to an alleged environmental insult. In this case, Oliver's diagnosis is nothing more than an opinion that Mr Allen suffered from Multiple Chemical Sensitivity.  Federal Courts have uniformly rejected such a diagnosis for lack of reliability under Daubert. Id. The opinion lacks reliability particularly in light of the fact that the cause of ALS is unknown. As such, since the cause of ALS is unknown, Oliver's opinion does not stand to reason, or the pass the Daubert threshold. An alleged exposure, to an unknown amount of a solvent, for an unknown amount of time, cannot be said to a reasonable degree of scientific, or medical certainty to exacerbate, or hasten the onset of the disease for which there is no known cause.  Expert testimony must be excluded when it rests on unverified assumption, speculation and guesswork. Polaino at 69 (expert failed to investigate facts upon which hypothesis was based in case regarding alleged toxic exposure from x-ray processor when did not investigate (1) how mixer was vented; (2) whether the chemicals are processed in an open or closed system; (3) the temperature at which the mixer operates; (4) whether fumes are in fact released when equipment is operate with undiluted chemicals; and (5) if they are, whether they are released at elevated levels).

Dr. Oliver is unable to provide an opinion of the length, the extent, or the amount of toluene that Mr. Allen was allegedly exposed to in late May/June 2001. The only evidence that Dr. Oliver can point to concerning Mr. Allen's alleged exposure is expressed on page ten of her opinion, wherein she states *"the occurrence of these symptoms and their persistence suggests that exposures were at or above the permissible exposure limit (PEL) established by the occupational safety and health administration (OSHA) of 200ppm, established as an eight hour time with an average for workers in an industrial setting"*. The use of the verb "suggests"; is rank speculation on the part of Dr. Oliver. It is anecdotal and should be stricken. Id. At 69. Oliver's suggestiveness does not, by her own admission, have any statistical significance. Braun v. Lorillard, Inc., 84 F.3d 230 (7th Circ. 1996). Nor does Oliver show why or how mere "suggestiveness" scientifically supports a causal connection. Id. Therefore, Oliver's basis for her opinion must be rejected. Id.

**B.**    **Dr. Oliver did not consider other factors that Mr. Allen was exposed to and she has not adequately accounted for alternative explanations for the plaintiff's death.**

Dr. Oliver's testimony should be precluded on the grounds that she has failed to account for alternative explanations. Dr. Oliver additionally does not have sufficient knowledge regarding the medical history or physical condition of Mr. Allen to make a qualified opinion in this matter. Additionally, Dr. Oliver's use of a differential diagnosis in order to arrive at her opinion that the time of onset and later progression of ALS in Mr. Allen's case was causally related to his exposure solvent vapors during the course of instillation of Versaturf 360 flooring system in the field house is also without foundation. The differential diagnosis is allegedly based upon the fact that Mr. Allen did not have a

medical history of familial ALS, nor exposure to agricultural chemicals. Thus she opines

that (although the cause of ALS is unknown) Mr. Allen condition must have been caused

by the alleged exposed to toluene. As discussed above, expert testimony should not be

based upon temporal proximity and anecdotal evidence. Allison at 1312. Oliver attempts

to buttress her opinion upon the alleged foundation laid by Dr. Ratner. That too, fails.

The defendant incorporates, as if expressed directly herein, all of the arguments made its

its Motion for Summary Judgment and/or to Preclude Dr. Ratner's Opinion.

Moreover, Dr. Oliver's opinion was created exclusively for use in this litigation.

Such opinions are disfavored by the drafters of the Federal Rules of Evidence. FED. R.

EVID. 702 advisory committee's notes.   No epidemiological study has found a

statistically significant link between toluene exposure and the hastening of ALS. *See*

*generally* Ratner. Thus, Oliver's opinion does not rise to the level of reliability necessary

to comport with the Federal Rules of Evidence 702 and 703 and the mandates of Daubert.

The suggestion that the exposure levels that Mr. Allen would have been subjected during

the floor refinishing may have been in excess of OSHA regulations is not probative of the

question of whether Allen's ALS was hastened by this alleged exposure. Allen v. PA

Engineering Corp., 102 F.3d 194, 198 (5th Cir. 1996). Thus, reliance on Oliver's opinion

for the neurotoxic effects of toluene upon Mr. Allen is only speculative and not

supportive of the plaintiff's causation theory.

**D.**    **The Connection Between Toluene and the Hastening of ALS is Not Reliable Under the Four Factors Suggested by Daubert, and Should Therefore be Precluded.**

The connection between toluene and the hastening of ALS is not reliable under the

enumerated factors in Daubert, and expert testimony regarding their connection should

therefore not be held admissible on these grounds. *See generally* Ratner (upon whose opinion Oliver relies admitted there is no single study that supports her opinion.

In deciding whether an expert's testimony is reliable, the court may consider whether the theory 1) has been subjected to publication and peer review; 2) has been tested; 3) has a known rate of error; and 4) has general acceptance in the relevant discipline.  Daubert at 593-4.

Establishing medical causation requires application of the scientific method that is, the generation of a testable hypothesis that is then subjected to the real-world crucible of experimentation, falsification/validation, and replication. *See* Daubert at 593. In this instance the applicable medical field of study is Epidemiology. Epidemiology is defined as the field of public health and medicine that studies the incidence, distribution, and etiology (cause) of diseases in society.  The purpose of epidemiology is to better understand disease causation and to prevent disease in groups of individuals.

In toxic tort cases, the methods and techniques of epidemiology provide scientifically accepted means of assessing the relationship between exposure to an agent and the potential health consequences. Allen v. Perm. Eng'g Corp. 102 F.3d 194, 197 (5th Cir. 1996) ("the most useful and conclusive type of evidence in a case such as this is epidemiological studies"); Sutera v. The Perrier Group of Am., Inc., 986 F, Supp. 655, 662-63 (D. Mass. 1997) (lack of epidemiological evidence supporting causal relationship between exposure to substance and claimed disease key factor in exclusion of expert's causation opinion). It cannot be concluded that the expert's mere assertion that

a methodology is reliable is sufficient to pass the <u>Daubert</u> test absent any other evidence showing its reliability. <u>Id.</u> referring to <u>Kumho Tire Co. v. Carmichael,</u> supra at 157.

### 1.    A Connection Between Toluene Exposure and the Hastening of ALS Has Not Been Subjected to Peer Review and Publication

Although <u>Daubert</u> has enumerated peer review and publication as one factor useful in determining expert reliability, the plaintiff's own expert has made clear that the connection has not been subject to these mediums. *See generally* <u>Ratner.</u>

### 2. & 3. A Connection Between Toluene Exposure and the Hastening of ALS Has Not Been Tested and Therefore Does Not Have a Known Rate of Error

<u>Daubert</u> further suggests reviewing whether a theory has been tested and has a known rate of error as a means of determining reliability.  <u>Daubert</u> at 594.  Daubert and its progeny make clear that "[p]roposed [expert] testimony must be supported by appropriate validation." Daubert, 509 U.S. at 591. See Daubert, 509 U.S. at 593 (emphasizing the district court's role as a "gatekeeper" and stating that valid scientific methodology usually involves "generating hypotheses and testing them to see if they can be falsified"); <u>Smelser v. Norfolk Southern Ry. Co.</u>, 105 F.3d 299, 304 (6th Cir. 1997) There is not one single study that either Ratner or Oliver can point to that supports their opinion that an exposure of an unknown duration and amount hasten the manifestation of ALS in Mr. Allen.

### 4.    A Connection Between Toluene Exposure and ALS is Not Generally Accepted Within the Scientific Community.

The fourth enumerated factor in <u>Daubert</u> suggests determining the reliability of expert testimony was whether a theory was generally accepted within scientific

community.  <u>Daubert</u> at 594.  Again, there is not one single study that either Ratner or Oliver can point to that supports their opinion that an exposure of an unknown duration and amount hasten the manifestation of ALS in Mr. Allen.

Where the Defendant respectfully requests this Honorable Court to preclude the Plaintiff from introducing expert witness Dr. Christine Oliver, and grant it summary judgment.

Dated: November 1, 2007

Respectfully submitted,
The Defendant,
Southwest Recreational Industries,
Inc. d/b/a Martin Surfacing

/s/ Michael L. Mahoney

_____
Michael L. Mahoney
Mullen & McGourty
52 Temple Place, 4th Floor
Boston, MA 02111
(617) 338-9200
BBO# 557562